(No. 18100.—⬛)
ADA WILSON NELSON, Appellant, *vs.* ALFRED WILSON *et al.*
Appellees.

*Opinion filed June 23, 1928.*

**12**

WILLIAM REEDA, CHARLES E. PEACE, and WILLIAM JAFFE, for appellant.

CHARLES J. TRAINOR, for appellees.

Mr. COMMISSIONER PARTLOW reported this opinion:

On July 19, 1924, appellant, Ada Wilson Nelson, filed her bill in the circuit court of Cook county against appellees, Alfred Wilson, Eva Erickson, Irv. Erickson, the Chicago Title and Trust Company, John C. Berg and Emma C. Berg, to set aside certain deeds. Two years later an amended bill was filed. A demurrer was sustained to the amended bill, it was dismissed for want of equity, and an appeal has been prosecuted to this court.

The bill alleged that appellant was born in Sweden on July 31, 1885. When she was nine years old she was brought to this country by Clara J. Wilson and Alfred Wilson, her aunt and uncle, and she lived with them as their child for many years. Her name was Eda Maria Alm, but she was known as Ada Wilson. Clara Wilson, who was her father's sister, owned two lots in Chicago. On one of them was a two-story frame house and the other was vacant. Clara Wilson died January 5, 1898, leaving a will, in which she devised the lot on which the house was located to appellant, subject to the homestead rights of the testatrix's husband, who was to have the use of the premises as long as he occupied them as a home. The will directed the executor to sell the vacant lot and use the proceeds for the education and support of appellant. The executor refused

to act and the surviving husband was appointed administrator with the will annexed, and he filed an inventory showing no personal estate. The real estate was subject to a trust deed for $600 to the Illinois Building and Loan Association. Two claims were allowed against the estate, amounting to $265. On March 6, 1901, a petition was filed to sell the real estate to pay debts, and ten years later the petition was dismissed.

The bill alleged that appellant, by reason of her having been brought to this country by her aunt and uncle when a mere child and having lived in their household at various times, was told they would adopt her; that by virtue of said relation Wilson exercised a parental control over and a fiduciary relation toward her, and that she as a dutiful child submitted to his will, orders and commands; that immediately after the death of Clara Wilson, Wilson began conniving, scheming and designing to deprive and divest appellant of the property; that in 1900 he married Ida C. Wilson, and with her assistance continued to so conspire, scheme and connive; that for the purpose of accomplishing this end he told appellant it was necessary that she quit-claim the property to him; that he falsely and fraudulently told her that the property would be sold by the sheriff to pay debts against the estate, when in truth and in fact the only claims filed against the estate were two doctor bills, aggregating $265; that he falsely and fraudulently represented to her that if she would quit-claim the property to him it would be safe from sale and execution and would revert to her after his death; that at that time she was eighteen years of age and had no worldly experience and was not familiar with transactions of this kind, and by reason of the utmost trust, confidence and implicit faith which she had in Wilson, on July 7, 1904, she executed a quit-claim deed to him for the property, which deed was recorded July 13, 1904; that in furtherance of the conspiracy Wilson and wife executed a quit-claim deed to the property

14

to John C. Berg, dated December 3, 1904, and recorded December 5, 1904, and on the same date Berg and wife executed a quit-claim deed to Wilson and wife, which deed was recorded on the same date; that there was born to Wilson and wife a male child, who is now of age, and the bill prayed that he be made a party defendant to the bill; that Ida Wilson died in 1916 and title to the premises vested in Wilson; that the quit-claim deed executed by appellant to Wilson recited a consideration of one dollar, but in truth and in fact $100 passed from Wilson to appellant at that time, and upon information and belief it is alleged that the property is of the reasonable value of $15,000; that the consideration of one dollar recited in the deed and the $100 paid were wholly inadequate and unconscionable; that by reason of her youth, inexperience and ignorance as to the nature and effect of such transactions, and by reason of the fiduciary relation towards and undue influence over her by Wilson, and by reason of the several false and fraudulent misrepresentations and threats that the property would be sold by the sheriff unless it was conveyed by her to Wilson, she executed the quit-claim deed without knowing or being informed of its full import and effect; that shortly after the death of Clara Wilson appellant was forced to seek work and at the age of fourteen began to do housework and continued to so work until she was married to Roy Nelson, in 1918; that she received small wages, which were barely sufficient for the necessities of life; that by reason of the parental control and fiduciary relation toward her by Wilson and the undue influence and complete domination over her will by him and her utmost confidence and implicit faith in him, she was unaware of the fraud which had been perpetrated on her until 1923, when she was so advised by her friends; that she was then in poor financial circumstances and unable to seek redress; that Wilson occupied a portion of the house on the premises, and that Eva Erickson and Irv. Erickson, his daughter and son-in-law,

occupied the rest of the house; that there was executed by Wilson and wife to the Chicago Title and Trust Company, trustee, a trust deed dated September 12, 1911, to secure the payment of $600, due in five years, which indebtedness is barred by the Statute of Limitations and has been paid although not released of record. The prayer was that the deed of July 7, 1904, from appellant to Wilson, the deed from Wilson to Berg, and the deed from Berg to Wilson and wife, be vacated and set aside; that the rights of appellant under the will of Clara Wilson be determined and the title be decreed to be in appellant.

Appellant insists that the bill stated sufficient facts to excuse and explain any *laches* on her part and that the demurrer was improperly sustained. She insists that *laches* should not prevail where the bill alleges fraud and the commencement of an equitable action for relief within a reasonable time after the discovery thereof; that the allegations of the bill as to a fiduciary relation, parental control, undue influence, fraud, misrepresentation, ignorance, youth and inexperience were sufficient to overcome any charge of *laches*.

Equity does not encourage or enforce stale claims. (*McMeen* v. *Grant,* 268 Ill. 64.) Mere lapse of time is no bar to equitable relief where a reasonable excuse for the delay appears from the bill. (*Duncan* v. *Dazey,* 318 Ill. 500; *Moneta* v. *Hoffman,* 249 id. 56; *Middaugh* v. *Fox,* 135 id. 344.) A delay beyond the time fixed by the Statute of Limitations must be explained by averments in the bill before a complainant will be entitled to relief. (*Totten* v. *Totten,* 294 Ill. 70; *Coryell* v. *Klehm,* 157 id. 462; *Harding* v. *Durand,* 138 id. 515; *Walker* v. *Ray,* 111 id. 315.) In *Howe* v. *South Park Comrs.* 119 Ill. 101, and *Oliver* v. *Ross,* 289 id. 624, it was held that the party who challenges the title of his adversary to real property must be diligent in discovering that which will avoid the title and render it invalid and must be diligent in his application for re-

lief. Unreasonable delay, unexplained by equitable circumstances, has been held to be evidence of acquiescence and will bar relief. In *McDearmon* v. *Burnham,* 158 Ill. 55, it was held that good faith, conscience and reasonable diligence of the party seeking its relief are the elements that call a court of equity into activity. In the absence of these elements the court remains passive and declines to extend its relief or aid. It has always been the policy of the law to discountenance *laches* and neglect. In *Coolidge* v. *Rhodes,* 199 Ill. 24, it was held that where the question of *laches* is involved, if there are facts which would put a person of ordinary prudence upon inquiry the complainant will be chargeable with such knowledge as could have been obtained by such inquiry.

The bill shows that appellant came to America in 1894, when she was nine years old. Clara Wilson died in 1898, when appellant was thirteen years old. Appellant began work for herself in 1899, when she was fourteen years old, and continued such work until she was married, in 1918, at the age of thirty-three years. The deed from her to Wilson was executed July 7, 1904, when she was about nineteen years old. The original bill was not filed until six years after she was married and the amended bill was filed two years later, which was over twenty years after the execution of the deed. The bill alleged that by reason of appellant having lived in the Wilson home at various times they told her they would adopt her; that by virtue of such relationship Wilson exercised a parental control over and a fiduciary relation towards her, and that she as a dutiful child submitted to his will, orders and commands. There is no allegation as to when, or how long, such relation existed, or that she ever lived in Wilson's home after she went to work at the age of fourteen years, or that he ever sustained a fiduciary relation to her after she was fourteen years old, which was five years before the deed was executed. These allegations were not sufficient to show a fidu-

ciary relation or parental control at the time the deed was executed.

The bill alleged that after the death of Clara Wilson Wilson connived, schemed and designed to deprive and divest appellant of her property, and that this continued after his marriage to Ida Wilson, in 1900. There is no allegation as to what constituted this conniving, scheming and designing. There are no facts stated except that Wilson told appellant it was necessary that she deed the property to him; that he falsely and fraudulently told her the property would be sold by the sheriff to pay debts, and if she would deed it to him it would be saved from sale and would revert to her at his death. There is no allegation of any demand ever having been made by appellant upon Wilson to convey the title so it would revert to her upon his death or any refusal on his part to do so. From all that is alleged in the bill he may have so fixed the title or may have been willing to do so, in either of which events he would have complied with this part of the contract. The bill shows that there was a mortgage of $600 on the property, claims of $265 had been allowed against the estate with no personal property out of which to pay them, and a petition had been filed to sell the property to pay the debts. Under this state of facts the property would probably have been sold to pay debts if some action had not been taken by someone to prevent such a sale. So far as appears from the bill these statements made by Wilson may have been true. The property was saved from sale, and it may yet be left to appellant upon the death of Wilson.

After the property was deeded by appellant to Wilson he deeded it to Berg, who deeded it back to Wilson and wife. A son was born to Wilson and Ida. Ida died in 1916. The bill prayed that the son be made a party to the bill, but he was not made a party. There is no allegation as to what became of the interest of the son, who was an heir of his mother. It is alleged that on the death of Ida

the title vested in Wilson. How it so vested is not alleged. If the son had an interest he should have been made a party defendant so the court would have jurisdiction of all parties in order to grant relief. In this respect the bill was indefinite and was subject to demurrer. It is alleged on information and belief that the property was worth $15,000 and that the consideration was inadequate. Appellant was nineteen years old when she executed the deed, and it will be presumed, in the absence of allegations to the contrary, that she knew what she was doing at the time she executed the deed. If there was an inadequate consideration she should have known it before the expiration of twenty years after the deed was made and before the bill was filed.

It is alleged that appellant was unaware of the fraud that had been perpetrated upon her until 1923, when she was so advised by her friends. The only fraud alleged is the statement of Wilson to her that she should deed the property to him or the property would be sold by the sheriff and if she would deed it to him it would be saved from sale and execution and would revert to her after his death. All of these statements were made directly to appellant either before or at the time the deed was executed. She did not have to be informed of these matters by any of her friends. According to the allegations of the bill she was told by her friends in 1923 something she had known for almost twenty years. She was nineteen years old when she executed the deed. She was in possession of all of her faculties during all of the twenty years that elapsed after the deed was executed and before the bill was filed. If during that time there were facts which would put her upon inquiry as an ordinarily prudent person, she was chargeable with such knowledge as could have been obtained by such inquiry. The property at the time the deed was executed was subject, and still is subject, to the homestead and dower of Wilson. It was mortgaged for $600 and was subject to the claims allowed against the estate of

Clara Wilson. All of these facts were a matter of public record. Appellant was charged with notice thereof, and it was not necessary that she be informed by her friends as to the truth concerning them.

The bill alleged that Wilson and wife conveyed the premises to the Chicago Title and Trust Company on September 12, 1911, to secure the payment of an indebtedness of $600, due in five years; that this indebtedness is barred by the Statute of Limitations and it has been paid although not released of record, but there is no prayer for relief against the Chicago Title and Trust Company. There is no prayer for relief against Eva and Irv. Erickson, who are alleged to be in possession of a part of the premises. There is no allegation as to the nature of their occupancy, whether as tenants, grantees or otherwise. Being in possession they are presumptively in lawful possession. Without some allegation concerning their interest and a prayer for relief the bill was not complete and failed to state a cause of action against them.

The bill failed to state sufficient facts to show such fiduciary relation, parental control, fraud, misrepresentation, ignorance, youth and inexperience as entitle appellant to a decree. It failed to state sufficient facts to excuse her long continued delay in filing her bill. In the other respects above mentioned the bill was defective, and the demurrer was properly sustained.

The decree dismissing the bill for want of equity will be affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*