NORMAN MEYERS, Plaintiff-Appellant and Cross-Appellee, v. GEORGE KISSNER *et al.*, d/b/a Kissner and Weaver Farm Implement Company, *et al.*, Defendants-Appellees and Cross-Appellants.

Fifth District No. 5—89—0567

Opinion filed June 28, 1991.

HOWERTON, J., specially concurring.
CHAPMAN, J., dissenting.

Tracy W. Resch, of Parker, Siemer, Austin, Resch & Resch, of Effingham, for appellant.

G.W. Howard III, of Howard & Howard, of Mt. Vernon, for appellees George Kissner and Glen Weaver.

Edward Benecki, of Gosnell, Benecki, Borden & Enloe, Ltd., of Lawrenceville, for appellee Owen Rainwater.

JUSTICE HARRISON delivered the opinion of the court:

Defendants, George Kissner and Glen Weaver, d/b/a Kissner & Weaver Farm Implement Company, and Owen Rainwater, constructed earthen levees on their property which obstructed the natural flow of water and thereby caused injury to adjacent farmland owned by plaintiff, Norman Meyers. More than five years after the levees were constructed, plaintiff commenced this action against defendants in the circuit court of Wayne County to obtain both injunctive relief and damages. After finding that plaintiff's damage claim was time barred under section 13—205 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 13—205), the circuit court issued an injunction requiring that a portion of the levees be modified. Plaintiff now appeals. Defendants have all cross-appealed. For the reasons which follow, we reverse and remand with directions to enter judgment in favor of defendants.

The record before us shows that plaintiff and defendants own adjacent parcels of farmland along the Skillet Fork River in Orel Township, Wayne County. The river meanders wildly through the area, making it difficult for us to present a concise description of the relationship between the various tracts of land involved. For the purpose of this discussion, however, we think it sufficient to say that, generally speaking, plaintiff's land lies downstream from the parcels owned

by defendants. On the other hand, most of defendants' property lies south of the river's bank, while most of the land owned by plaintiff lies to the north. Although the question was disputed, evidence was presented which indicated that the topography is such that water falling upon the area would, if unobstructed, drain naturally in a southerly or southeasterly direction.

In 1977, defendants Kissner and Weaver erected a large earthen levee on their property. The levee began near the middle of their land next to a small body of water known as Horse Creek, extended to an area just short of the confluence of Horse Creek and the Skillet Fork River, then continued along the southern bank of the Skillet Fork River until it reached the eastern boundary of their property. Prior to this time, the Skillet Fork River was in the process of cutting a new channel in a southerly or southeasterly direction. There is no dispute that the purpose of the levee was to contain the water and to prevent the river from flooding across their ground.

The year after Kissner and Weaver finished their levee, defendant Rainwater began construction to extend the levee along that portion of the southern bank of the river which ran through his property. Construction of the Rainwater section was completed in the middle of 1979. Although the Illinois Department of Transportation, Division of Waterways, did not issue permits for the construction of any part of defendants' levees, the evidence showed that the levees were not subject to the State's permit requirements.

As they were intended to do, the levees obstructed the natural drainage pattern. This, in turn, caused injury to plaintiff's property, which became noticeable almost immediately. Testimony established that after the levees were completed, the river channel became deeper and wider, and the water current became stronger. Increased erosion, washing and scouring of plaintiff's land took place and, as a result, the quality of plaintiff's soil deteriorated and the market value of his property declined. In 1986, plaintiff ultimately decided to bring legal action against defendants to obtain redress for these injuries. Plaintiff's complaint, as amended, was in two counts. Both counts were based on the same factual allegations. They differed only in the type of relief requested. Count I sought a mandatory injunction to require defendants to remove the levee, while count II prayed for money damages.

In their answers to plaintiff's complaint, defendants raised as an affirmative defense that plaintiff's cause of action was untimely under the applicable statute of limitations. They subsequently amended their answers to raise as an additional affirmative defense that count I of

plaintiff's complaint, which sought injunctive relief, was also barred by the doctrine of *laches*. In addition, defendant Rainwater filed a counterclaim for contribution against defendants Kissner and Weaver pursuant to the Contribution Among Joint Tortfeasors Act (Ill. Rev. Stat. 1985, ch. 70, pars. 301 through 305).

Defendants each moved for summary judgment as to count II of plaintiff's complaint, which sought money damages. The sole basis for defendants' motions was that plaintiff had not filed suit until more than five years after the earthen levees had been constructed and that the suit was therefore barred by section 13—205 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 13—205), the statute of limitations applicable to actions to recover damages for injury to real property. Defendants' motions were granted, and judgment was entered by the court in favor of defendants and against plaintiff on count II. On a motion by Kissner and Weaver, the court also dismissed Rainwater's counterclaim for contribution.

After Kissner, Weaver, and Rainwater unsuccessfully attempted to obtain summary judgment in their favor on count I of plaintiff's complaint, the cause proceeded to trial before the court, sitting without a jury, solely on the question of whether plaintiff was entitled to the injunctive relief he had requested. Following the trial, at which extensive testimony was adduced, the court found that plaintiff had proved the allegations of count I and that defendants' levees, as constructed, improperly obstructed the natural water flow and caused injury to plaintiff's land. The court further found that defendants had failed to establish that plaintiff was guilty of *laches* in asserting his claim. The court determined, however, that additional evidence was necessary in order to assess the extent of injunctive relief which should be granted. A subsequent hearing was therefore held on this question. Based on the evidence presented at the hearing, the circuit court determined that complete removal of the levees was not required. Instead, it simply ordered certain modifications to that portion of the levee located on Owen Rainwater's property. From this judgment, plaintiff appeals and defendants cross-appeal.

On this appeal, plaintiff contends that the circuit court committed reversible error when it reopened the case *sua sponte* to take additional evidence on possible alternative remedies. Plaintiff further contends that the circuit court's judgment is infirm insofar as it granted plaintiff less than the full injunctive relief he requested. On his cross-appeal, defendant Rainwater asserts that the circuit court's judgment was contrary to the manifest weight of the evidence and that even the limited injunctive relief granted should be set aside. Defendants

Kissner and Weaver make no similar claim. To the contrary, they argue that, if the merits of the case are reached, the circuit court's judgment should be sustained as it is. All defendants, however, assert that the circuit court should have granted judgment in their favor on the grounds that count I was time barred under either the statute of limitations or the doctrine of *laches*. Defendant Rainwater also argues, in the alternative, that the circuit court erred in dismissing his contribution counterclaim against Kissner and Weaver.

██ Of these various issues, the only one which requires discussion is defendants' claim that count I was untimely, for we believe that it is dispositive of this appeal. As a preliminary matter, we note that there is no dispute that count II of plaintiff's complaint, which sought money damages, was subject to the five-year limitations period provided in section 13—205 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 13—205). (*Firestone v. Fritz* (1983), 119 Ill. App. 3d 685, 687, 456 N.E.2d 904, 906-07.) That statute expressly provides that a plaintiff must bring a cause of action to recover damages for an injury done to real property within five years "after the cause of action accrued." Ill. Rev. Stat. 1985, ch. 110, par. 13—205.

 Where, as here, the injury complained of consists of the unnatural overflow of water over the plaintiff's property, the question of when a cause of action for that injury accrues depends on the cause of the overflow. When a structure is placed on dominant land which unreasonably increases the flow of water onto the servient land and the structure is not necessarily injurious, but may be used in a way which may or may not result in injury, the cause of action does not accrue until the use of the structure causes injury. (*Gass v. Metro-East Sanitary District* (1989), 186 Ill. App. 3d 1077, 1084, 542 N.E.2d 1229, 1234.) On the other hand, where the injury occurs as a result of the construction or the proper operation of a structure which is permanent and which is necessarily injurious by reason of its construction, then the injury itself is considered permanent, and the limitations period runs from the date that the construction was completed, or from the time when the plaintiff knew or should have known of his injury and its cause. (186 Ill. App. 3d at 1084-85, 542 N.E.2d at 1234-35.) It has been held, moreover, that the fact that flooding may be uncertain in time, duration, and extent does not prevent an improvement, which displays obvious potential to cause an unnatural overflow upon completion, from constituting an immediate, permanent injury. *Firestone v. Fritz*, 119 Ill. App. 3d at 688, 456 N.E.2d at 907.

In this case, evidence was presented which would support a finding that the offending levees were permanent and that they were

"necessarily injurious by reason of [their] construction." According to the evidence, there was no possibility that the levees could have been used in a way that was not injurious to plaintiff's farmland. Their very reason for existence was to block the Skillet Fork River as it was beginning to shift its channel southward across defendants' property, to contain the water running through the river, and to prevent the river from flooding their property. Once the natural drainage pattern was obstructed in this way, the water flow had to go somewhere else, and that was upon plaintiff's property. According to the record, the levees caused the velocity of the river to increase and the channel of the river to grow deeper and wider, resulting in increased erosion, washing, and scouring of plaintiff's soil.

■ Under the principles cited above, the limitations period therefore ran from the time of completion of construction of the levees or, at most, from the time when plaintiff knew or should have known of his injury and its cause. There is no dispute that the section of the levee constructed by Kissner and Weaver was completed in 1977 and that the construction of the portion of the levee belonging to Rainwater concluded in 1979. There is also no question that plaintiff realized that these levees were causing injury to his property shortly after they were completed and that this discovery was made more than five years prior to the time when plaintiff finally decided to file suit in 1986. The circuit court therefore concluded that plaintiff's claim for money damages was time barred under section 13—205 (Ill. Rev. Stat. 1987, ch. 110, par. 13—205), thus entitling defendants to summary judgment on count II of his complaint.

Plaintiff has not appealed the circuit court's entry of summary judgment against him on count II and does not now attempt to dispute that his damage claim was untimely. Plaintiff contends, however, that his claim for injunctive relief is not subject to the same five-year limitations period, but is limited instead only by the period necessary for a servient landowner to establish a prescriptive right to obstruct the natural drainage flow and thereby cause water to overflow upon the property of a dominant owner. According to plaintiff, that period is 20 years. Plaintiff asserts that because the 20-year period had not yet run here, he was entitled to bring suit to enjoin the obstruction at any time. Although there is some force to this argument, we do not believe that it can withstand careful scrutiny.

■ Plaintiff is correct that a servient landowner who erects a levee or other barrier which obstructs the natural drainage of surface waters and causes those waters to back up upon the property of a dominant landowner may acquire a right to continue the obstruction if

certain conditions are met. This right, when it exists, is in the nature of a prescriptive easement. (*Montgomery v. Downey* (1959), 17 Ill. 2d 451, 458, 162 N.E.2d 6, 10-11.) To establish such a right, the servient owner must show that the invasion caused by the obstruction, *i.e.*, the overflow or flooding, took place with the knowledge and acquiescence of the dominant landowner; that it was both adverse and uninterrupted; and that it occurred for the full prescriptive period, which has historically been set at 20 years. (*Nelson v. Gundlock* (1983), 120 Ill. App. 3d 117, 119, 457 N.E.2d 1052, 1053; *Wills v. Babb* (1906), 222 Ill. 95, 106, 78 N.E. 42, 44.) This traditional 20-year prescriptive period is a product of the common law (see *Chicago & Northwestern Ry. Co. v. Hoag* (1878), 90 Ill. 339, 348-49), and appears to have been adopted, by analogy, from the statutory limitations period applicable to the acquisition of title to land by adverse possession (see *Roller v. Logan Landfill, Inc.* (1974), 16 Ill. App. 3d 1046, 1052, 307 N.E.2d 424, 429; 28 C.J.S. *Easements* §16, at 659 (1941)).

Plaintiff reasons that because the 20-year period governs the creation of a prescriptive right to obstruct the natural flow of surface water, it must also serve as the governing period of limitation for actions by a dominant landowner against servient owners to challenge such obstructions. We disagree. A threshold problem with such a rule is that if it applies to an action by a dominant landowner for equitable relief, there is no reason it should not also apply to an action by a dominant landowner for damages. The defense of easement by prescription has, after all, been equally available in actions at law for damages as in suits in equity.

The historic availability of the defense in damage actions is well illustrated by *Chicago & Northwestern Ry. Co. v. Hoag* (1878), 90 Ill. 339, 348-49, one of the earliest decisions by our supreme court to discuss the right of a landowner to obtain a prescriptive easement to cast water upon an adjoining owner's property. There, the landowner suffering the overflow of water sought money damages only. No injunction or other equitable relief was requested. Yet, the court's disposition leaves no doubt that had a prescriptive easement been established, the plaintiff landowner's action would have been barred.

The reason this creates a problem is that the legislature has determined, through enactment of section 13—205 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 13—205) and its predecessor provisions, that actions for damages resulting from injury to real property must now be brought within five years of when the cause of action accrues. If plaintiff's theory were correct, this five-year limitations period would therefore be reduced to a nullity.

To avoid this problem, plaintiff would evidently have us treat such damage actions as a limited exception to the 20-year common law rule. As support for this theory, plaintiff relies on the fact that, in the context of actions for injury to real property, the language of section 13—205 of the Code (Ill. Rev. Stat. 1985, ch. 110, par. 13—205) specifically refers only to recovery of damages. Claims for equitable relief are not mentioned. This omission, however, does not have the significance plaintiff would suggest.

■■ As a general rule, suits in equity are not subject to statutory limitations periods. Technically, they are governed instead by *laches*. (*Trustees of Schools v. American Surety Co.* (1940), 307 Ill. App. 398, 406, 30 N.E.2d 513, 517.) Hence, one would not normally expect them to be expressly included in the statute setting the limitations period. This does not mean, however, that same period set forth in the statute does not apply with equal force to corresponding suits in equity. To the contrary, the law is well established that "in fixing the period in which equitable rights and claims will be barred by *laches*, equity follows the law, and generally courts of equity will adopt the statute of limitations period." (*Brown v. Goodman* (1986), 147 Ill. App. 3d 935, 941, 498 N.E.2d 854, 858.) Accordingly, where a claim for equitable relief is not brought until after the limitations period for the corresponding legal action has expired, it too will be time barred, even if the delay in filing suit has caused no prejudice to the defendant. 147 Ill. App. 3d at 941, 498 N.E.2d at 858; *Schlossberg v. Corrington* (1980), 80 Ill. App. 3d 860, 864-65, 400 N.E.2d 73, 76.

We fail to see how any other rule could be justified where, as here, the legal and equitable claims are based on the same basic set of facts, charge the same wrongful conduct, and involve the same permanent injury. If separate limitations periods were available, as plaintiff urges, a litigant whose damage action had been dismissed for failure to comply with the requisite five-year limitations period could simply modify his pleadings to include a prayer for injunctive relief, delete his request for money damages, and bring an entirely new action anytime he wanted up to expiration of the 20-year period. This, however, could raise serious *res judicata* problems.

■■ Under the doctrine of *res judicata*, a final judgment on the merits by a court of competent jurisdiction constitutes an absolute bar to any subsequent action involving the same claim, demand, or cause of action. (*Page v. Illinois Central Gulf R.R.* (1987), 162 Ill. App. 3d 744, 746, 516 N.E.2d 431, 432-33.) For purposes of the doctrine, the dismissal of a claim on statute of limitations grounds constitutes such a final judgment on the merits. (*Sankey Brothers, Inc. v. Guilliams*

(1987), 152 Ill. App. 3d 393, 398, 504 N.E.2d 534, 538.) That equitable relief was not sought in the original action will not prevent the doctrine from operating, for *res judicata* extends not only to all matters which were actually decided, but also to all matters which could have been raised or determined. Moreover, even though a single group of operative facts may give rise to the assertion of different types of relief, or different theories of relief, it is still a single cause of action that exists. (*Page v. Illinois Gulf Central R.R.*, 162 Ill. App. 3d at 746, 516 N.E.2d at 433.) Accordingly, it has been recognized that, under the doctrine, an action in law can bar a subsequent suit in equity, or vice versa. (*Hagee v. City of Evanston* (7th Cir. 1984), 729 F.2d 510, 515 n.10 (applying Illinois law).) The theory advanced by plaintiff fails to account for these principles.

We recognize that the courts of Illinois have not spoken with a single voice on when *res judicata* comes into play (see *Best Coin-Op, Inc. v. Paul F. Ilg Supply Co.* (1989), 189 Ill. App. 3d 638, 652, 545 N.E.2d 481, 490), and the doctrine is easier to state than to apply. Even if the doctrine were inapplicable, however, plaintiff's argument for separate limitations periods would nevertheless offend the public policy against the splitting of claims or causes of action.

■ The rule against claim splitting, which is closely related to the doctrine of *res judicata*, has developed in order to ensure that litigation will come to an end and that no person will be unnecessarily harassed with a multiplicity of lawsuits. That rule provides that where a demand or right of action is in its nature entire and indivisible, it cannot be split up into several causes of action and be made the basis of many separate suits. Rather, the law requires that both in law and in equity a plaintiff must present all grounds of recovery he may have. (*Best Coin-Op, Inc. v. Paul F. Ilg Supply Co.*, 189 Ill. App. 3d at 657, 545 N.E.2d at 493.) As the example given above illustrates, however, plaintiff's theory would effectively jettison this requirement where, as here, a single, permanent injury has been sustained.

Given these problems, we must conclude that in cases such as this, equity must indeed follow the law. Accordingly, where, as here, an obstruction to the natural flow of water is permanent in nature, all actions to obtain redress for permanent injury to real property caused by such obstructions must be commenced within the five-year period specified by section 13—205 (Ill. Rev. Stat. 1985, ch. 110, par. 13—205), whether the relief sought consists of money damages or a mandatory injunction to require that the obstruction be removed.

■ This holding is in no way inconsistent with the 20-year period recognized at common law for the establishment of a prescriptive

easement. That period remains. Until the requisite 20 years have elapsed, a servient landowner's obstruction of the natural water flow will still not ripen into a prescriptive easement. Correspondingly, the dominant landowner will retain his right to have the natural water flow kept free from obstruction. If the obstruction and attendant injury are permanent in nature, however, the dominant landowner will simply be barred from seeking legal or equitable relief for injury to his property caused by the obstruction once more than five years have elapsed since the cause of action accrued.

For a landowner to thus be left with a right which can no longer be enforced is not as anomalous as it may seem. Under the law of Illinois, statutes of limitation simply limit the time within which an action must be brought or remedies must be enforced. (*La Pine Scientific Co. v. Lenckos* (1981), 95 Ill. App. 3d 955, 958, 420 N.E.2d 655, 658.) They are therefore generally considered to affect only a party's remedy and do not alter substantive rights. (*Lambert v. Village of Summit* (1982), 104 Ill. App. 3d 1034, 1040, 433 N.E.2d 1016, 1021.) As a result, being left with an unenforceable right is inherent whenever a limitations period operates to bar a claim. (See, *e.g., Fleming v. Yeazel* (1942), 379 Ill. 343, 345-46, 40 N.E.2d 507, 508 (limitations statute does not extinguish debt, but merely eliminates remedy for its enforcement).) The situation here is no different.

We note, moreover, that where an offending obstruction is not necessarily injurious and the injury alleged is not permanent, the continued viability of the 20-year prescriptive period may have much more tangible consequences. As we have already explained, the cause of action will accrue and the limitations period will begin to run in such a case from the date of the last overflow. By the time the last overflow occurs, however, the flooding of the dominant owner's property may have been going on for 20 years. Thus, even if the dominant landowner brings suit within five years of the latest overflow, and his remedies for that injury are not barred by the limitations period, his claim may still be defeated if, by the time suit is brought, the 20-year prescriptive period has elapsed and all the other elements necessary to establish a prescriptive easement have been established.

In any case, because the injury here was permanent and because plaintiff's claim for injunctive relief in count I was not brought until more than five years after that claim accrued, the claim is untimely and should have been dismissed. Accordingly, the judgment of the circuit court of Wayne County is reversed, and the cause is remanded with directions to enter judgment in favor of defendants and against plaintiff on count I of plaintiff's complaint. In view of this disposition,

we need not reach defendant Rainwater's alternative argument that the circuit court erred in dismissing his counterclaim for contribution.

Reversed and remanded with directions.

JUSTICE HOWERTON, specially concurring:
I concur in the result. However, I cannot join the majority opinion insofar as it either says or implies that if the statute of limitations has expired, *laches* automatically applies.

JUSTICE CHAPMAN, dissenting:
"For He cometh to judge the earth: with righteousness shall he judge the world, and the people with equity." Psalms 98: 9, King James version.
Beginning this dissent with a quote from Psalms is not meant to suggest that any member of this court possesses either omniscience or any other quality associated with the Deity. The quote was chosen because it is an ancient recognition of the difference between law and equity. That difference, at least with regard to permanent obstructions to the natural flow of water, has been completely destroyed by the majority's opinion in this case.

Justice Harrison's disposition concludes that the 20-year period necessary to establish an easement by prescription is not applicable to an action by a dominant landowner against servient owners to challenge obstructions to the natural flow of surface water. The opinion of this court has in fact created a right of prescriptive easement that is established five years from the beginning of the prescriptive use, and it has done this while refusing to acknowledge the consequences of its action.

Further, by its expression of concern about potential *res judicata* difficulties, the majority both creates a nonexistent problem and overlooks factual scenarios which are more likely to arise in the future. Neither a *res judicata* nor a claim-splitting problem is presented in this case; the plaintiff sought both money damages and equitable relief. If problems do arise in future cases because of claim splitting, those problems can be dealt with in those cases.

While the majority may be justifiably concerned in raising the potential problem of claim splitting, it also appears to have outlined the solution to that problem by recognizing that "*res judicata* extends not only to all matters which were actually decided, but also to all matters which could have been raised or determined." 217 Ill. App. 3d at 145.

I am concerned that the majority, by some process of intellectual insemination, has brought forth a new rule of law establishing a five-year period of prescriptive easements, while refusing to either acknowledge paternity or to concern itself with the parenting problems that its new child will present. The majority states, "This holding is in no way inconsistent with the 20-year period recognized at common law for the establishment of a prescriptive easement. That period remains. Until the requisite 20 years have elapsed, a servient landowner's obstruction of the natural water flow will still not ripen into a prescriptive easement. Correspondingly, the dominant landowner will retain his right to have the natural water flow kept free from obstruction. If the obstruction and attendant injury are permanent in nature, however, the dominant landowner will simply be barred from seeking legal or equitable relief for injury to his property caused by the obstruction once more than five years have elapsed since the cause of action accrued." 217 Ill. App. 3d at 145-46.

Before today's opinion, the law regarding time limitations on prescriptive easements in Illinois could be summarized as follows:

(1) After five years, suits for money damages were barred by the statute of limitations. Ill. Rev. Stat. 1989, ch. 110, par. 13—205.

(2) Between 5 and 20 years, the doctrine of *laches* applied to suits seeking equitable relief. Under the doctrine, equity would generally follow the law, *i.e.*, the five-year statute of limitations applicable to suits for money damages would apply unless the plaintiff pled and proved extenuating circumstances to relieve himself from the applicability of the five-year statute. *Schlossberg v. Corrington* (1980), 80 Ill. App. 3d 860, 400 N.E.2d 73.

(3) After 20 years, the dominant owner's rights were extinguished and the servient owner had a prescriptive easement. *Poulos v. F.H. Hill Co.* (1948), 401 Ill. 204, 214, 81 N.E.2d 854, 859.

Justice Harrison's opinion eliminates category two from Illinois law while explicitly denying that it does so: "This holding is in no way inconsistent with the 20-year period recognized at common law for the establishment of a prescriptive easement." (217 Ill. App. 3d at 145-46.) To say in one sentence that the 20-year period remains and that the dominant landowner will retain the right to have the natural flow free from obstruction, and in the next sentence that the dominant landowner's rights are barred after five years, is to

engage in the use of the English language worthy of Lewis Carroll at his best.

The majority mentions that "[f]or a landowner to thus be left with a right which can no longer be enforced is not as anomalous as it may seem." (217 Ill. App. 3d at 146.) I would reply that I am sure it seems quite anomalous to the plaintiff in this case, and the court should also be concerned about other cases which may present some of the parenting problems which I referred to earlier.

Consider the following scenario: Jones, owner of Blackacre, causes an unnatural flow of water upon Whiteacre, which is owned by Smith. This unnatural flow of water continues for four years 364 days, when Whiteacre is sold to the Widow Allen. Under the law as prescribed in this court's opinion, Widow Allen has one day to file her claim contesting Jones' prescriptive use of her property, or otherwise be barred from remedy. Should Widow Allen fail to file her claim within one day, equity will not come to her rescue. She is not entitled to either monetary or injunctive relief.

Consider also the scenario where Whiteacre, owned by Widow Alzheimer, is plagued for five years by the unnatural flow of surface water from Blackacre. Widow Alzheimer dies and Whiteacre is transferred to Smith. Smith's remedies against Jones are forever barred.

The fact that the same results would occur after 20 years does not answer my objection to the majority's disposition, which is that it is making a significant change in the law while refusing to acknowledge the effect of its action.

Equity follows the law. However, contrary to Justice Harrison's disposition, the statute of limitations does not strictly apply to equity cases. (*Trustees of Schools v. American Surety Co.* (1940), 307 Ill. App. 398, 406, 30 N.E.2d 513, 517.) Where a party seeking relief after the statutory period has elapsed affirmatively pleads and proves a reasonable basis for the delay, he may avoid application of the statute of limitations to his cause of action. (*Schlossberg v. Corrington* (1980), 80 Ill. App. 3d 860, 865, 400 N.E.2d 73, 76, citing *Nelson v. Wilson* (1928), 331 Ill. 11, 162 N.E. 144.) Our supreme court has stated:

> "[L]aches is not simply a matter of time; rather, it is a principle of 'inequity founded upon some change in the condition or relation of the property and the parties' [citation]. That is, it must appear that a plaintiff's unreasonable delay in asserting his rights has prejudiced and misled the defendant, or caused him to pursue a course different from what he

would have otherwise taken. [Citations.] If the defendant is not injured by the delay, then plaintiff is not guilty of laches." *People ex rel. Casey v. Health & Hospitals Governing Comm'n* (1977), 69 Ill. 2d 108, 115, 370 N.E.2d 499, 502.

In the instant case, Meyers' reason for not filing a cause of action until nearly seven years after construction of the levee was completed was that Meyers attempted to have the levee removed through the Illinois Department of Transportation, and when that failed, he sought judicial relief. Defendants maintained that if Meyers were permitted to proceed, they would be prejudiced by the delay in Meyers' commencing his action. Defendants argued that they expended funds in constructing the levee in question and in subsequently repairing and maintaining the same, and were deprived of the opportunity to gather evidence to refute the claims alleged by plaintiffs. The trial court *found* that the defendants failed to prove *laches* by a preponderance of the evidence in that they failed to prove that they were injured by any delay by the plaintiff in filing suit. This finding should not be disturbed unless the trial court abused its discretion in making it. (*Finley v. Finley* (1980), 81 Ill. 2d 317, 330, 410 N.E.2d 12, 18.) The majority does not even acknowledge the fact that the trial court made this specific finding, let alone make any attempt to establish that its finding was against the manifest weight of the evidence. Instead, the majority creates the new rule discussed earlier.

After reviewing the record, I conclude that the trial court's finding on *laches* is not against the manifest weight of the evidence. There is no need to extend this dissent further by discussion of all of the points raised by the parties in their respective briefs. I would affirm the trial court:

" '[E]quity is not so weak of arm or lame of foot.' From its earliest origins equity was designed to avoid the rigidity of common-law writs and procedure and to adjust itself to the requirements of justice." *Strom v. Strom* (1957), 13 Ill. App. 2d 354, 367, 142 N.E.2d 172, 179.