**In re Robert P. JANSEN, Debtor.**

**Bankruptcy No. 92–41281.**

United States Bankruptcy Court,
S.D. Illinois.

Jan. 12, 1994.

John Brunsman, Asst. Atty. Gen., Springfield, IL, for Ill. Dept. Revenue.

Webb H. Smith, Carbondale, IL, for debtor.

Robert Kearney, Benton, IL, Chapter 13 trustee.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

Prior to seeking relief under chapter 13 of the Bankruptcy Code, debtor operated a business known as Cultured Creams and, as such, was subject to the requirements of the Illinois Retailers' Occupation Tax Act and the Illinois Use Tax Act.[1] The Illinois Department of Revenue (the "IDR") filed a priority claim in the amount of $15,585.00 for unpaid taxes for the period of July 1988 through October 1989. On its proof of claim, the IDR indicated that the "kind of tax" owed is "ROT/UT." Debtor filed an objection to claim, contending that the taxes are dischargeable under sections 523(a) and 507(a)(7)(E) of the Bankruptcy Code and that the IDR's claim is therefore not entitled to priority status. The IDR contends that the tax debt is nondischargeable and is entitled to priority under section 507(a)(7)(C).

A discharge under 11 U.S.C. § 727 does not discharge an individual debtor from tax debts "of the kind and for the periods specified in section ... 507(a)(7) ... whether or not a claim for such tax was filed or allowed." 11 U.S.C. § 523(a)(1)(A). Among the taxes listed in section 507(a)(7) are "excise tax[es] on a transaction occurring before the date of the filing of the petition for which a return, if required, is last due ... after three years before the date of the filing of the petition." 11 U.S.C. § 507(a)(7)(E). "Thus, excise taxes ... are dischargeable if they became due

1. Specifically, debtor was engaged in the business of selling ice cream and, as a retailer, was required to pay and/or collect taxes for the sale of ice cream pursuant to the Retailers' Occupation Tax Act and Use Tax Act.

532

more than three years before the filing of the bankruptcy petition." *In re Groetken,* 843 F.2d 1007, 1009 (7th Cir.1988). However, some taxes are not dischargeable regardless of how "stale" they become. Section 507(a)(7)(C) describes certain types of taxes that are to be given priority without any limitation upon the time when they became due. These taxes, which are never dischargeable, are those "required to be collected or withheld and for which the debtor is liable in whatever capacity." 11 U.S.C. § 507(a)(7)(C). Subsection C includes the so-called "trust fund" taxes (income taxes an employer is required to withhold from employees' pay and the employees' share of social security taxes), as well as other taxes that a person is required to collect and hold on behalf of a governmental unit. *In re Groetken,* 843 F.2d at 1010.

■ Debtor asserts that the taxes in question are excise taxes that became due more than three years before the bankruptcy petition was filed and, as such, are dischargeable under sections 523(a)(1)(A) and 507(a)(7)(E). The IDR contends that debtor was required to collect the taxes under the Illinois Use Tax Act and that the taxes are, therefore, nondischargeable and entitled to priority under section 507(a)(7)(C), regardless of their age. Resolution of this issue requires a brief examination of the Illinois Retailers' Occupation Tax Act and the Use Tax Act and the relationship of those Acts to the Bankruptcy Code.

■ The Occupation Tax Act imposes "a tax … upon persons engaged in the business of selling at retail tangible personal property…." 35 ILCS 120/2. This tax is imposed directly on retailers "at the rate of 6.25% of gross receipts from sales of tangible personal property made in the course of business." 35 ILCS 120/2–10. The Occupation Tax Act is complemented and reinforced by the Use Tax Act, which imposes a 6.25% tax "upon the privilege of using in this State tangible personal property purchased at retail from a retailer…." 35 ILCS 105/3. The tax applies to retail purchases made in Illinois as well as in other states. "The purpose of the Use Tax is to prevent the loss of tax revenues to the state and the concomi-

tant loss in sales to Illinois retailers that could result from Illinois consumers buying tangible personal property outside of Illinois in order to avoid the ROT [Occupation Tax]." *In re Cain,* 145 B.R. 966, 968 (Bankr.S.D.Ill. 1992).

■ The Occupation Tax and the Use Tax are not imposed cumulatively. As explained by the Seventh Circuit:

> The Use Tax Act expressly relieves a retailer from remitting any Use Tax it collects if the retailer pays the Occupation Tax. Moreover, although the Occupation Tax Act does not contain a similar provision, the Illinois Court of Appeals has indicated that a retailer who pays the Use Tax does not have to pay the Occupation Tax. Therefore, although there are two taxes actuated by the same sale and purchase, only one of the two payments is remitted to the State, and the single payment satisfies both taxes.

*In re Groetken,* 843 F.2d at 1011 (citations omitted). However, "[i]f a retailer fails to pay the Occupation Tax the State has a claim under the Occupation Tax Act *and* a claim under the Use Tax Act." *Id.* at 1014 (emphasis in original).

In the present case, the IDR has indicated on its proof of claim that the "kind of tax" owed is "ROT/UT," meaning, of course, Retailers' Occupation Tax and Use Tax. The certified assessments submitted by the IDR at the hearing on this matter likewise specify that the taxes owed are for "Occupation and Use Tax." It is clear, therefore, that the IDR has elected to file its claim for unpaid taxes under both the Occupation Tax Act and the Use Tax Act. The question that remains is this: Are debtor's tax obligations under those Acts nondischargeable and entitled to priority treatment pursuant to sections 523(a)(1)(A) and 507(a)(7)(C) of the Bankruptcy Code?

In *Rosenow v. State of Ill., Dept. of Revenue,* 715 F.2d 277 (7th Cir.1983), the Seventh Circuit expressly held that unpaid obligations under the Illinois Use Tax Act fall within section 507(a)(7)(C) and are nondischargeable regardless of when they became due. In response to debtors' argument that the Use

Tax is not a "traditional trust fund tax," the Court explained:

> [T]here are really two types of sales tax liabilities at issue: those which are owed personally by a debtor, for example, on purchases he himself has made, and those incurred by a retailer's customers, which are collected by the retailer under the authority of the state and then owed by the retailer to the state. In relation to the latter, the retailer in fact appears to be holding for the benefit of the state taxes which his customers would otherwise owe—an obvious similarity to the income and social security taxes ("trust fund taxes") which are unquestionably covered by Section C.

*Id.* at 280. The Court then concluded as follows:

> 1. If a tax falls within Section C, it is nondischargeable.
>
> 2. The Illinois Use Tax by its terms falls within Section C.
>
> 3. A retailer is relieved of the Use Tax obligation only if the Occupation Tax has been paid.
>
> 4. The debtors in this case have not paid their Illinois Retailers' Occupation Tax.
>
> 5. Therefore they remain liable for the Use Tax obligation (per 3, above).
>
> 6. Therefore the unpaid obligations under the Use Tax Act in this case are not dischargeable (per 1 and 2, above).

*Id.* at 282.

Applying that logic to the instant case, it is clear that debtor's tax obligations are nondischargeable and that the IDR's claim is a priority claim under section 507(a)(7)(C).

Very simply, debtor has failed to pay the Retailers' Occupation Tax and under the holding in *Rosenow*, is liable for the Use Tax, a nondischargeable debt entitled to priority status under 507(a)(7)(C). Thus, "[r]egardless of [debtor's] characterization of the funds collected by [the IDR], the law is clear that the arrearage becomes an obligation under the Illinois Use Tax Act if the ROT is not paid. [The IDR], by merely asserting its rights under the Illinois Use Tax Act, can ensure that the debt is nondischargeable." *In re Cain*, 145 B.R. at 968.[2]

▮ Debtor also contends that because the IDR is barred by the state statute of limitations from bringing suit to collect the tax debt, it is therefore barred from recovering the debt in this bankruptcy proceeding. The Retailers' Occupation Tax Act provides:

> In case of failure to pay the tax, or any portion thereof ... the Department may bring suit to recover the amount of such tax ... provided that no such suit ... shall be instituted more than 2 years after the date any proceedings in court for review thereof have terminated or the time for the taking thereof has expired without such proceedings being instituted ... nor ... shall such suit be instituted more than 2 years after the date any return is filed with the Department in cases where the return constitutes the basis for the suit for unpaid tax....

35 ILCS 120/5.[3] The IDR concedes that the statute of limitations for filing suit has expired but contends that other remedies are available for collecting the delinquent taxes, namely, the right of setoff and the right to

---

**2.** Debtor relies on *In re Groetken* for the proposition that the Retailers' Occupation Taxes are dischargeable. In that case, the Seventh Circuit held that the Illinois Occupation Tax is an excise tax falling under Section E and is dischargeable if it became due more than three years before the filing of the bankruptcy petition. *In re Groetken*, 843 F.2d at 1013–14. That case is clearly distinguishable from the instant case, however, in that the State had elected to proceed solely on its Occupation Tax claim. In discussing the differences between the Occupation Tax Act and the Use Tax Act, the Court noted, "The Occupation Tax is imposed directly on retailers. Retailers are not required to collect the tax. The Use Tax is imposed on purchasers. Retailers are re-

quired to collect this tax from purchasers on behalf of the State. These differences have critical significance under the Bankruptcy Code." *Id.* at 1014. The Court then stated, "[W]e see no practical reason why the State does not always sue under both statutes.... Because the State's judgment was solely under the Occupation Tax Act and retailers are not required to collect the Occupation Tax, its judgment does not fall under the 'trust fund' tax exemption from discharge." *Id.* at 1015.

**3.** The Use Tax Act incorporates, by reference, the statute of limitations set forth in the Retailers' Occupation Tax Act. *See* 35 ILCS 105/12.

impose an "administrative bank levy or wage deduction."

Section 10.05 of the State Comptroller Act provides in pertinent part:

Whenever any person shall be entitled to a warrant or other payment from the treasury or other funds held by the State Treasurer, on any account, against whom there shall be any account or claim in favor of the State, then due and payable, the Comptroller, upon notification thereof, shall ascertain the amount due and payable to the State, as aforesaid, and draw a warrant on the treasury or on other funds held by the State Treasurer, stating the amount for which the party was entitled to a warrant or other payment, the amount deducted therefrom, and on what account, and directing the payment of the balance; which warrant or payment as so drawn shall be entered on the books of the Treasurer, and such balance only shall be paid.

15 ILCS 405/10.05. In *La Pine Scientific Co. v. Lenckos*, 95 Ill.App.3d 955, 51 Ill.Dec. 241, 420 N.E.2d 655 (1981), the IDR, citing section 10.05, argued that it should be allowed to set off unpaid tax assessments (issued under the Retailers' Occupation Tax Act) against a taxpayer's overpayment of income taxes, despite the fact that the statute of limitations for bringing suit to collect the unpaid assessments had expired. The court agreed, stating:

Statutes of limitation affect the remedy by limiting the period within which legal action may be brought or remedies may be enforced; they bar the right to sue for recovery but do not extinguish the debt which remains as before. It is clear that the assessments in question remain as debts owing to the State but are not enforceable by means of a lawsuit brought by the State. They had not been "extinguished" as the trial court found but were merely unenforceable in a court of law. As such, the assessments are still claims "then due and payable" for purposes of section 10.05 and were properly set off against plaintiff's tax overpayment.

*Id.*, 51 Ill.Dec. at 244, 420 N.E.2d at 658 (citations omitted). *See also Meyers v. Kissner*, 217 Ill.App.3d 136, 160 Ill.Dec. 140, 576 N.E.2d 1094 (1991), *rev'd on other grounds*, 149 Ill.2d 1, 171 Ill.Dec. 484, 594 N.E.2d 336 (1992); *American Acoustics, Etc. v. Dept. of Rev.*, 107 Ill.App.3d 616, 62 Ill.Dec. 892, 437 N.E.2d 419 (1982) (statutes of limitation are generally considered to affect only a party's remedy and do not alter substantive rights).

In addition to the right of setoff, the IDR argues that it can collect the taxes owed by imposing a bank levy or wage deduction pursuant to section 5f of the Retailers' Occupation Tax Act.[4] That section provides in part:

In addition to any other remedy provided for by the laws of this State, if the tax imposed by this Act is not paid within the time required by this Act, the Department, or some person designated by it, may cause a demand to be made on the taxpayer for the payment of the tax. If the tax remains unpaid for 10 days after demand has been made and no proceedings have been taken for review, the Department may issue a warrant directed to the sheriff of any county of the State or to any State officer authorized to serve process, commanding the sheriff or other officer to levy upon property and rights to property ... of the taxpayer, without exemption, found within his or her jurisdiction, for the payment of the amount of unpaid tax with the added penalties, interest and the cost of executing the warrant.... Any officer or employee of the Department designated in writing by the Director is authorized to serve process under this Section to levy upon accounts or other intangible assets of a taxpayer held by a financial organization.... In addition to any other provisions of this Section, any officer or employee of the Department designated in writing by the Director, may levy upon the salary, wages, commissions and bonuses of any employee ... by serving notice of levy on the employer.

35 ILCS 120/5f. "No proceedings for a levy under this Section may be commenced more

---

**4.** Again, the Use Tax Act incorporates, by reference, section 5f of the Retailers' Occupation Tax Act. *See* 35 ILCS 105/12.

than 20 years after the latest date for filing of the notice of lien under Section 5b of this Act, without regard to whether such notice was actually filed." *Id.*

Thus, while the IDR is barred by the statute of limitations from filing a civil lawsuit to collect the delinquent taxes, the taxes remain collectible under the specific statutory remedies set forth above. Accordingly, the IDR is entitled to pursue its claim in the instant bankruptcy proceeding.[5] Debtor's argument to the contrary simply has no merit.

Finally, debtor contends that even if the underlying tax is nondischargeable and entitled to priority treatment, the *penalty* assessed by the IDR *is* dischargeable. Debtor is correct. Section 523(a)(7)(B) provides that penalties "imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition" are dischargeable. 11 U.S.C. § 523(a)(7)(B). Thus, "if the events giving rise to the penalty occurred more than three years before the date of the petition, any noncompensatory tax penalty is dischargeable even if the tax is not." Ginsberg, *Bankruptcy: Text, Statutes, Rules* § 11.06[k] (2d ed. 1991). *See also In re Roberts*, 129 B.R. 171, 172–73 (C.D.Ill.1991); *In re Torres*, 143 B.R. 183, 188 (Bankr.N.D.Ill.1992). In the present case, the proof of claim filed by the IDR includes a penalty in the amount of $1,017.00 that was assessed more than three years before the bankruptcy petition was filed. The penalty is therefore dischargeable.

Accordingly, for the reasons stated, debtor's objection to claim with respect to the underlying tax debt is OVERRULED. Debtor's objection to claim with respect to the penalty on that tax debt is SUSTAINED.

---

5. In this regard, it is important to note the Bankruptcy Code's definition of "claim." A claim is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured...." 11 U.S.C. § 101(5).