(No. 48570.-)
THE PEOPLE *ex rel.* JOHN P. CASEY *et al.*, Appellees, v. HEALTH & HOSPITALS GOVERNING COMMISSION OF ILLINOIS *et al.*, Appellants.

*Opinion filed October 5, 1977.*

Department of Legal Affairs of the Health & Hospitals Governing Commission of Cook County (William P. Tuggle, Joan M. Pucillo, Robert C. Samko, and Gail D. Hasbrouck, of counsel), for appellants.

Richard F. McPartlin, of Chicago, for appellees John P. Casey and John McIntyre.

John J. Muldoon, of Chicago, for appellee William J. Bamrick.

MR. JUSTICE CLARK delivered the opinion of the court:

This is an appeal, consolidated in the appellate court, from the entry of two orders by the circuit court of Cook County denying defendants' motions to strike and dismiss and directing writs of *mandamus* to issue against defendants (Health & Hospitals Governing Commission of Illinois; James Bailey, Director of Personnel for Cook County Hospitals; and the Merit System Advisory Committee). The orders directed defendants to reinstate relators, John P. Casey, John McIntyre, and William Bamrick, to their former positions of employment at two hospitals which are under the administration of the Health & Hospitals Governing Commission of Illinois (Commission), an independent county agency created by the legislature to operate certain medical institutions (Ill. Rev. Stat. 1971, ch. 34, par. 5011 *et seq.*). Defendants were further commanded to pay relators the salaries appropriate for their positions from the dates of their termination to the date of their reinstatement. The appellate court affirmed the orders of the circuit court (37 Ill. App. 3d 1056), and we granted leave to appeal.

Relators Casey and McIntyre were employed as firemen-oilers at Oak Forest Hospital. Each had attained the status of career employee pursuant to the Commission's statutorily required merit system. Under the provisions of the statute governing the Commission, it is provided that "[n]o merit or career employee may be discharged, demoted or suspended for a period of more than 30 days, except for cause and upon written charges." (Ill. Rev. Stat. 1971, ch. 34, par. 5026.) Despite the foregoing provision, the Commission adopted a resolution establishing mandatory retirement for institutional em-

ployees, effective January 1, 1973. Pursuant to this policy, Casey and McIntyre were summarily retired by defendants on December 29 and December 31, 1972, respectively, without cause or the presentation of written charges and without a hearing.

The petition of relators Casey and McIntyre represented that other institutional employees who had been discharged pursuant to defendants' compulsory-retirement program had brought actions against the Commission in the circuit court of Cook County. Relators' petition also stated that consolidated appeals had been taken in those cases from orders declaring the mandatory-retirement invalid and directing the reinstatement of those other employees. The petition further noted that on August 15, 1974, in the case of *Sibley v. Health & Hospitals' Governing Com.* (1974), 22 Ill. App. 3d 632, the appellate court affirmed the orders of the circuit court, holding that the Commission had no inherent power to remove merit system employees for age. On November 6, 1974, Casey and McIntyre served notice and demand upon defendants to restore relators to their former positions.

Relator Bamrick served as a fireman's helper at Cook County Hospital from 1954 until December 31, 1972, at which time he was summarily discharged by defendants pursuant to their compulsory-retirement program. The complaint asserts that, in light of the appellate court's decision in *Sibley v. Health & Hospitals Governing Com.* (1974), 22 Ill. App. 3d 632, the rule which compelled Bamrick to retire is null and void and that reinstatement is thus appropriate.

On November 26, 1974, relators Casey and McIntyre and relator Bamrick filed their respective *mandamus* actions praying for reinstatement and payment of back salary. Defendants responded to both complaints with motions to strike and dismiss "for the reason that

plaintiffs' suit is not timely brought." The trial court denied these motions and, after defendants chose to stand on their motions and not provide answers, writs of *mandamus* were issued as prayed. The appellate court affirmed. 37 Ill. App. 3d 1056.

The only issue raised on appeal is whether relators' right to reinstatement by way of *mandamus* is barred by *laches* as a result of their 23-month delay in bringing their actions.

We agree with defendants' initial assertion that where an unreasonable delay is apparent on the face of a complaint, the plaintiff has an affirmative duty to set forth a valid excuse therefor, or the action may be barred by *laches*. (*Schultheis v. City of Chicago* (1909), 240 Ill. 167, 170; *Haas v. Commissioners of Lincoln Park* (1930), 339 Ill. 491, 503.) However, according to section 43(4) of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 43(4)), affirmative defenses, such as *laches,* "must be plainly set forth in the answer or reply." By standing on their motions to strike, defendants waived their answers and thereby failed to raise the defense of *laches* under section 43(4).

Admittedly, section 43(4) has not been construed to mean that affirmative defenses may be raised only by answer or reply. Where *laches* is apparent on the face of a complaint and plaintiff has allegedly failed to set forth a reasonable excuse for the delay, "there appears to be no reason why the defect cannot be raised by motion *so long as the motion specifically points out the defect complained of.*" (Emphasis added.) (*Holland v. Richards* (1955), 4 Ill. 2d 570, 573.) Accordingly, under section 45(1) of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 45(1)), a party may, by motion, object to pleadings; but it is incumbent upon the moving party to "point out specifically the defects complained of" in order to give plaintiffs the opportunity to file amended com-

plaints to correct any deficiencies.

On oral argument, counsel for the defense made it clear that defendants' motions to strike and dismiss had been brought under section 45 of the Civil Practice Act and contended that relators' complaints are defective for allegedly failing to set forth any reasonable excuse for the 23-month delay in bringing this action. However, by stating simply that "plaintiffs' suit is not timely brought," defendants' motions failed to specifically point out the alleged defect in relators' complaints and thereby failed to raise the defense of *laches* under section 45.

Although defendants' cause must fail on the issue of defective pleadings alone, for additional reasons the defendants' position cannot be sustained.

Defendants contend that the complaints of relators failed to affirmatively set forth any facts excusing the 23-month delay in bringing this action and that relators are thus guilty of *laches.* This argument is without merit. The mere passage of time does not bar relief where a reasonable excuse for the delay is apparent in the complaint. (*Nelson v. Wilson* (1928), 331 Ill. 11, 15; see also *Duncan v. Dazey* (1925), 318 Ill. 500, 525.) First, a delay of 23 months by discharged employees in bringing *mandamus* actions for reinstatement and accrued back pay, which is caused by awaiting the disposition of a prior pilot suit involving employees discharged under the same policy, is reasonable and does not constitute *laches.* (*Duncan v. Summerfield* (D.C. Cir. 1957), 251 F.2d 896, 897; *Jones v. Summerfield* (D.C. Cir. 1959), 265 F.2d 124, 125; *State ex rel. Prior v. Kansas City* (Mo. 1924), 261 S.W. 112, 114.) Second, the record discloses that relators filed their *mandamus* actions on November 26, 1974, little more than three months after the appellate court rendered its decision in *Sibley v. Health & Hospitals Governing Com.* (1974), 22 Ill. App. 3d 632. From the facts alleged in the complaints, which included a history of the *Sibley* litigation, it is a reasonable

and logical inference that all relators at bar were awaiting the outcome of the prior, controlling litigation. Therefore, the *mandamus* complaints sufficiently demonstrated why there had not been an earlier institution of the action.

In addition, defendants fail to recognize that *laches* is not simply a matter of time; rather, it is a principle of "inequity founded upon some change in the condition or relation of the property and the parties" (*Holland v. Richards* (1955), 4 Ill. 2d 570, 578). That is, it must appear that a plaintiff's unreasonable delay in asserting his rights has prejudiced and misled the defendant, or caused him to pursue a course different from what he would have otherwise taken. (*People ex rel. Griffin v. City of Chicago* (1943), 382 Ill. 500, 504; *People ex rel. Gramlich v. City of Peoria* (1940), 374 Ill. 313, 322; see also *Haas v. Commissioners of Lincoln Park* (1930), 339 Ill. 491, 502; *Neidhardt v. Frank* (1927), 325 Ill. 596, 601.) If the defendant is not injured by the delay, then plaintiff is not guilty of *laches*.

The defendants contend that prejudice to an employer is inherent any time a public employee delays in seeking reinstatement because another person must be hired to replace the discharged employee. That is, if the employee succeeds in securing accrued back pay, the employer must pay him for services rendered by a third person and for which that third person has already been compensated. Thus, the longer the delay, the greater the burden on the employer. We recognize this risk and agree that the defense of *laches* should be available to an employer when sued by a discharged public employee.

In this case, however, the discharge of relators was not an isolated incident. Relators were discharged in furtherance of a general policy involving numerous employees, at least eight of whom were already involved in actions, which had been consolidated into the *Sibley* appeal against the Commission. It is thus apparent that the defendants

had no intention of reinstating any employee who was discharged pursuant to their mandatory-retirement program unless and until such program was ruled invalid by the appellate court in *Sibley*. Moreover, immediate action by relators would have been futile since the defendants undoubtedly would have sought and received a delay pending the outcome in *Sibley*. Therefore, if relators recover accrued back pay for services rendered by another person, the Commission will be injured by its own wrongful retirement policy, but not by relators' awaiting the outcome of prior litigation (before taking these actions). See *Duncan v. Summerfield* (D.C. Cir. 1957), 251 F.2d 896, 897.

Since all parties understood that *Sibley* was a test case which directly controlled relators' claims and that relators intended to await the outcome of that litigation before bringing their actions, it was incumbent upon the Commission to come forward and demonstrate that relators' delay had otherwise prejudiced it or induced it to change its position. Under the circumstances, we believe that the Commission failed to do so.

Hence, we affirm the judgment of the appellate court.

*Judgment affirmed.*

MR. JUSTICE UNDERWOOD, dissenting:

Were there in the complaint or proceedings in this case an allegation that these plaintiffs were aware that the validity of the retirement ordinance, pursuant to which they were discharged, was being challenged in the *Sibley* litigation and that they had been advised by counsel to await its outcome, or had independently reached that conclusion, I would join the court's opinion. There is no such allegation, nor is there even an allegation that these plaintiffs knew the *Sibley* suit was pending. Plaintiffs have made no attempt to excuse their nearly two-year delay in seeking reinstatement, and under our case law as it has

heretofore existed, the motion to strike and dismiss their complaint because "not timely brought" should have been allowed.

The majority opinion does not refer to what I had considered to be the existing rule, established by numerous cases in this and the appellate court, that discharged public employees seeking review of their discharges must file their complaints for review within six months of the time of discharge or explain in the complaints the reasons why it was not filed within that six-month period. *E.g., Carroll v. Houston,* 341 Ill. 531, 537; *People ex rel. Macauley v. Burdette,* 285 Ill. 48, 50-51; *Schultheis v. City of Chicago,* 240 Ill. 167, 170; *Clark v. City of Chicago,* 233 Ill. 113, 114-15; *People ex rel. Sullivan v. Smith,* 133 Ill. App. 2d 218, 220; *People ex rel. Cronin v. Cahill,* 118 Ill. App. 2d 18; *Kadon v. Board of Fire and Police Commissioners,* 45 Ill. App. 2d 425; *People ex rel. Ballinger v. O'Connor,* 13 Ill. App. 2d 317.

Illustrative of the cases stating the reasons for and applying the six-months *laches* rule is *Kadon,* where it was said:

> "Delay in prosecuting a cause of action is one of the elements of laches and its importance is relative to the action involved. In some types of action it is the most important element. \*\*\* And in civil service cases, where prolonged delay may easily prejudice governmental bodies, impair orderly procedures and work to the disadvantage of third parties, time is an essential factor. The most stringent requirement timewise is in those cases brought by civil service employees to compel reinstatement and payment of back salaries after discharges alleged to be illegal. A rule has been established that if these actions are not brought within six months of the discharge they will be barred on the ground of laches, unless a reason-

able explanation can be given for the delay. People ex rel. Cifaldi v. Wilson, 38 Ill. App. 2d 302, 187 N.E.2d 353; People ex rel. Ballinger v. O'Connor, 13 Ill. App. 2d 317, 142 N.E.2d 144." 45 Ill. App. 2d 425, 430.

In *People ex rel. Macauley v. Burdette,* 285 Ill. 48, 51, the court stated with reference to a discharged clerk in the State grain inspection office who delayed filing for 10 months and 13 days after his discharge: "There was nothing stated in this petition showing why the petition was not filed within six months. We see no escape, under the above authorities, from holding that the relator was guilty of *laches* in not filing his petition within six months after his discharge." This language was quoted with approval in *Carroll v. Houston,* 341 Ill. 531, 537.

Because the complaints in this case refer to *Sibley* as deciding plaintiffs were wrongfully discharged, the majority opinion states that "it is a reasonable and logical inference that all relators at bar were awaiting the outcome of the prior, controlling litigation" and finds this a sufficient excuse for their delay of nearly two years in filing their action. But this is not the only "reasonable and logical inference" to be drawn from their failure to act sooner. At least equally so, in my judgment, is the allegation in these proceedings that plaintiffs in fact knew nothing of the *Sibley* litigation until after it had been concluded and the results publicized. That allegation would seem to be corroborated by the fact that plaintiffs did not even file with the Commission a notice of their desire for reinstatement until nearly three months after the appellate court filed its *Sibley* opinion. There is simply nothing I have been able to find in this record which supports the majority's statement that "all parties understood that *Sibley* was a test case which directly controlled relators' claims and that relators intended to await the

outcome of that litigation before bringing their actions."

The majority opinion also holds the Commission failed to raise the defense of *laches* because its motion to strike and dismiss did not "point out specifically the defects complained of." That motion was based *solely* on the assertion that "plaintiffs' suit is not timely brought." It was accompanied by a memorandum of law referring to the six-months rule and citing some of the cases included in this dissenting opinion, as well as others. For the majority of this court to now hold it failed to specifically point out the defect in plaintiffs' complaint is, in my judgment, simply unsupportable.

Were this only an opinion involving two years back pay for three employees, it would, perhaps, not merit the time and effort involved in writing a dissenting opinion. But it has, in my judgment, substantially greater impact. A discharged public employee need no longer promptly notify his employer that he seeks reinstatement; instead, he may wait at least as long as two years to do so if he can point to litigation pending during that interval which in some way affected his rights even though he may have been unaware of that litigation until after its conclusion. Public bodies operate on limited budgets, and should be able to predict their financial needs with reasonable certainty. They must hire replacements for discharged employees. Those replacements acquire employment and seniority rights. These problems are not readily resolved when the discharged employees are reinstated with years (now approaching five in this case) of back pay. It is, in my judgment, not at all unreasonable in these circumstances to require, as have our previous decisions, that the discharged employee demand reinstatement and file his complaint within the six-months period following discharge or explain in a later complaint his reasons for not doing so.

I would reverse the trial court and allow the motion to dismiss.

MR. JUSTICE RYAN joins in this dissent.