(No. 94-CC-0311–

JAMES E. RUDOLPH, Claimant, *v.* THE STATE OF ILLINOIS; KANE COUNTY *et al.*, Respondents.

*Opinion filed October 4, 2000.*

CARL M. WALSH & LONNY BEN OGUS, for Claimant.

JIM RYAN, Attorney General (EDWARD C. SEWARD, III, Assistant Attorney General), for Respondents.

## ORDER ON MOTIONS TO DISMISS

EPSTEIN, J.

This is a wrongful discharge claim arising out of Claimant's January 2, 1990, termination from his position as Executive Director of Court Programs of the Sixteenth Judicial Circuit of the Circuit Court of Illinois, and is before us on the Respondent's 2—615 and 2—619 motions to dismiss. (735 ILCS 5/2—615, 5/2—619.)

Claimant seeks a writ of *mandamus* to reinstate him to his former position (Count I) and back wages of $161,000 as of 1993 (Count II); both counts are predicated on an alleged employment contract with the Sixteenth Judicial Circuit of the Circuit Court, which Claimant alleges was breached by his unilateral termination by the Chief Judge.

### The Motions to Dismiss

The Respondent's motions to dismiss assert grounds of: (1) failure to state a cause of action against the State, (2) failure to attach alleged written instruments (personnel manuals) constituting the contracts sued upon, (3) lack of jurisdiction over the individual and local government (county) respondents, (4) lack of jurisdiction to grant *mandamus* or equitable relief (*i.e.*, reinstatement), (5) the bar of collateral estoppel, based on prior litigation in the constitutional courts, and (6) the bar of *laches*. The Claimant has filed objections to the motions.

The first five grounds are readily disposed of with mixed results. The *laches* ground—asserting a *per se* six-month *laches* period—is surprisingly a matter of first impression in this Court.

### History of this Case—The Prior Litigation

Claimant's action in the circuit court was filed November 24, 1992. His claim in this Court was filed on August

11, 1993, shortly after the circuit court's dismissal of his action in that court. This claim was placed on general continuance pending the disposition of Claimant's appeal of the circuit court dismissal, which the Appellate Court affirmed on *laches* grounds on October 11, 1994.

In the circuit court, Claimant's reinstatement and back wage claim named as defendants all of the Respondents named here other than the State. The circuit court of Kane County (Agnew, J., sitting by special appointment of the Supreme Court), first dismissed the county defendants and the 16th Circuit judges other than the Chief Judge on the basis that Mr. Rudolph was a State employee. The court relied on *County of Kane v. Carlson* (1987), 116 Ill. 2d 186 and *Orenic v. Illinois State Labor Relations Bd.* (1989), 127 Ill. 2d 453, for the proposition that administrative court personnel (probation officers there) are employed by the Chief Judge of the circuit as State employees rather than as county employees. The sole remaining defendant there was the successor Chief Judge then serving, Judge Gene L. Nottolini.

The circuit court finally dismissed the wrongful discharge claims on the basis of sovereign immunity. Judge Agnew dismissed the claims with prejudice, and relying on *Gordon v. Department of Transportation* (1983), 99 Ill. 2d 44, held (See mem. opinion at 6-25-93):

"* * * the plaintiff complains of a violation of a contract by a judicial officer of this state. The factual [sic] determination of a violation of the contract must first be determined in the Court of Claims before *mandamus* will lie to restore the plaintiff to his previous position."

The Appellate Court, finding that "this is such an egregious case of untimely filing, * * * opt[ed] to affirm on [the] ground" of *laches*, holding (in a Rule 23 order that is "not precedential") that:

"Courts have devised a rule to be used in applying the doctrine of *laches* to wrongful termination actions against public sector employers when those actions seek reinstatement and back pay. (*Long v. Tazewell/Pekin Consolidated Communications Center* (1992), 236 Ill. App. 3d 967, 602 N.E.2d 856.) The rule is that a delay of longer than six months from the date of termination to the filing of suit is *per se* unreasonable and will justify dismissal on the basis of *laches*. (*Long* [citation omitted].) A two-pronged test is used in applying this rule. First, the court must determine whether the employer has been prejudiced, *i.e.*, whether the employer will have to pay a salary to both a replacement and to a successful plaintiff for the period of the delay. Second, the court must assess whether the plaintiff has given a reasonable excuse for the delay. *Long* [citation omitted].

In the case at bar, the defendants have shown that they were prejudiced by showing that the plaintiff's position was filled in February 1990 and the plaintiff has provided no excuse for delaying almost three years before filing suit." *Rudolph v. Kane County*, No. 3-93-0871 (Ill. App. Ct., 3d Dist., October 11, 1994), Rule 23 Order at 2-3, Breslin, J.

In February, 1999, the Claimant requested active status for this claim; at the very end of 1999, the Respondent filed its motions to dismiss.

## The Jurisdictional Issues

First, this claim must be dismissed as to the county respondents: Kane, Kendall and DeKalb Counties. They are local government units and, although characterized for some purposes as "subdivisions" of the State, counties are not part of the State government and are beyond the jurisdiction of this Court under section 8 of the Court of Claims Act. 705 ILCS 505/8.

The Respondent's motion next attacks the impleading of the various judges of the 16th Judicial Circuit individually in this case. That motion would be well-taken if the complaint named those judges in their individual capacities or, to the same effect, sought relief against them individually. However, we read this complaint to name those judges solely in their official capacity as judges of the 18th Judicial Circuit, *i.e.*, as State judicial officers, and not as individuals. The complaint does not seek relief

against the named judges individually. Accordingly, their status as Respondents in this case is nominal and unnecessary, but raises no jurisdictional concern.

Nevertheless, we will dismiss the claim as to the judicial Respondents, other than the Chief Judge of the Circuit, for three reasons. Their inclusion as Respondents is inconsistent with Rule 790.40(c) of this Court (74 Ill. Adm. Code 790.40(c)) governing the captioning—and hence naming of parties—of cases in this Court, which directs that the State or the pertinent State agency be named as the Respondent, which is effected by naming the judicial circuit or the Chief Judge thereof as Respondent. The individual judges are clearly unnecessary as parties herein; and Claimant has given no cogent reason for their remaining as Respondents.

The third jurisdictional issue concerns our authority to issue writs of *mandamus* to compel reinstatement to State employment. Although *mandamus* was one of the common law writs, and is a legal rather than equitable remedy as a matter of law and of history, we believe that the issue of this Court's authority to grant such relief is governed by *Garimella v. Board of Trustees of the University of Illinois* (1996), 50 Ill. Ct. Cl. 350.

In *Garimella*, we held that this Court lacks the authority to grant injunctive (equitable) relief, because the legislature had not conferred such power upon this Court. Writs of *mandamus* directed at State officials or agencies are functionally equivalent to mandatory injunctions. The General Assembly has not conferred such remedial powers on this Court in any form. (Moreover, in the years since *Garimella, supra,* the General Assembly has not statutorily overruled our decision or empowered us to issue directives to State agencies or officers.) Count I must be dismissed for want of jurisdiction to grant *mandamus*.

## Failure to Comply with Section 2—606 of the Code of Civil Procedure

Respondent's motion, pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615), focuses on the Claimant's failure to attach to his pleading the two employee "handbooks" on which Claimant predicates, in part, his wrongful termination claim: a 16th Judicial Circuit Court services personnel policy manual and a Kane County personnel policy handbook. Respondent urges that this omission fatally violates section 2—206, and further argues that, insofar as the Kane County document is asserted, that could support only a claim against Kane County and is thus jurisdictionally irrelevant to this claim.

Claimant has attached the 16th Circuit manual to his response to the motion, and we will allow that to satisfy the pleading requirement. We agree that the Kane County handbook is irrelevant, on the allegations before us, and we are dismissing Kane County as a Respondent in any event. These arguments, accordingly, are not a basis for dismissal against the State.

## Failure to State Cause of Action

Respondent's contention that this complaint fails to state a cause of action is predicated on the Claimant's failure to attach the alleged contract (*i.e.*, the personnel policy handbook(s)) and on the theory that a claim based on the Kane County handbook must lie only against that county and not against the State. We have dealt with the attachment issue, and have dismissed Kane County, and find that as a pleading matter, the claim against the State based on the 16th Judicial Circuit Court services personnel policy manual (and on the Kane County manual if it is shown that the 16th Circuit adopted that manual as its own) is sufficient to state a claim.

## Collateral Estoppel

Respondent asserts a collateral estoppel against the Claimant's claim, based on his having asserted the same claims against the same parties in the circuit court, which were there dismissed "based on sovereign immunity" and, on appeal, as barred by *laches*. Claimant replies that the parties are not identical and that there was no final order on the merits in that proceeding to which collateral estoppel might attach; both are elements of collateral estoppel. See *Talarico v. Dunlap* (1977), 172 Ill. 2d 185, 685 N.E.2d 325.

The State is uniquely a party in this Court and was not a party in the prior action, except insofar as the Chief Judge was a party there in his capacity as a State officer. However, the circuit court held it lacked jurisdiction over the Chief Judge as a State officer, due to sovereign immunity. Once that court held it lacked jurisdiction, any other findings carry no collateral estoppel effects, *Lehman v. Continental Health Care, Ltd.* (1st Dist. 1992), 240 Ill. App. 3d 795, 608 N.E.2d 303.

The Appellate Court's *laches* findings present a trickier collateral estoppel issue. Although the Appellate Court affirmed on a different ground (*laches*) than the circuit court, its affirmance left undisturbed the trial court's jurisdictional holding, so that all other ensuing findings would not have collateral estoppel effects, including any findings of the Appellate Court. On the other hand, it seems clear that the Appellate Court had *appellate* jurisdiction to review the circuit court's dismissal even though that order was based on lack of jurisdiction. On this view, the Appellate Court's election to affirm on *laches* ("we opt to affirm on this ground") was a final order on the merits of that defense in a proceeding in which the deciding court had jurisdiction to render the judgment that it rendered.

We need not decide that jurisdictional conundrum, because although the Appellate Court concluded that *laches* barred the action in the circuit court, it made no factual findings as to the Claimant's justification or lack of justification for delaying his filing in the circuit court— except to observe that he "has provided no excuse for delaying," which is not a finding of ultimate fact—to which collateral estoppel might attach. In addition, the factual *laches* issue there is not identical to the *laches* issue in this Court, even assuming *arguendo* that the same *laches* rule applies here as there, because in this Court the *laches* issue turns on the Claimant's delay in filing here. That may prove to be a more difficult factual hurdle, given the later filing in this Court, but it is not identical.

## Laches

The Respondent insists that *laches*, historically an equitable doctrine that arises as an affirmative defense to claims for equitable relief, applies to this *legal* wrongful discharge claim under established Illinois law. Indeed, the Appellate Court in the antecedent case between these parties held (in a "non-precedential" order, relying on its 1992 *Long* decision, *supra*) that the Illinois courts have fashioned a particularized formulation of the *laches* doctrine—a six-month *laches* rule—for public employment wrongful discharge claims. Respondent urges us to recognize and apply this affirmative defense, which it has duly raised in its section 2—619(1) motion.

Claimant urges us not to recognize this equitable defense to a purely legal back wage and *mandamus* claim, in light of the specific limitations rules imposed on this Court by the legislature. Claimant points out that section 22(a) of our statute prescribes a general five-year limitation period for contract claims (735 ILCS 505/22(a)), unless such claim is "otherwise sooner barred by law" (*id.*,

section 22). Noting that this Court has traditionally construed that alternative "sooner barred" phrase to refer to other shorter *statutes* of limitations, Claimant argues that the judge-made *laches* doctrine falls outside of section 22 of the Court of Claims Act and hence cannot shorten the time in which a Claimant can seek relief in this Court.

Remarkably, this issue—the application of *laches* to a legal action—and the narrower issue of the application of the Illinois six-month *laches* rule to claims of wrongful discharge from public employment—appears to be a matter of first impression in this Court. There are strong arguments on both sides of this issue.

Initially, although we agree that the "sooner barred" clause of our limitation statute (section 22 of the Court of Claims Act) primarily refers to shorter statutes of limitations than those contained in section 22, the language is broad enough to encompass bars arising under case law as well as under statute so long as it is a *legal* bar. The section 22 language is not dispositive of this issue: it does not preclude the application of *laches* in this Court (at least if *laches* is a legal as well as an equitable bar), but neither does it support the application of *laches*. It is also noteworthy that *laches*, when traditionally applied to equitable actions, can bar an action despite an applicable statute of limitation that would allow a later filing. We must reject Respondent's argument that section 22 precludes the application of *laches*.

The threshold issue remains whether or not *laches* is applicable to this wrongful discharge claim against the State as a matter of Illinois law. We turn to an examination of the Illinois case law.

Since at least 1906, the Illinois courts have applied *laches* in public employment discharge cases, *i.e.*, where

*public* employees seek judicial relief from their termination or discharge; these cases have almost always involved claims for both reinstatement and back pay. (See *City of Chicago v. Condell* (1906), 224 Ill. 595, 79 N.E. 954.) In our Supreme Court's most recent visit to this issue, in *People ex rel. Casey v. Health & Hospitals Governing Commission* (1977), 69 Ill. 2d 108, 370 N.E.2d 499, the majority stated the reason for the rule:

"° ° ° prejudice to an employer is inherent any time a public employee delays in seeking reinstatement because another person must be hired to replace the discharged employee. That is, if the employee succeeds in securing accrued back pay, the employer must pay him for services rendered by a third person and for which that third person has already been compensated. Thus, the longer the delay, the greater the burden on the employer. We recognize this risk and agree that the defense of *laches* should be available to an employer when sued by a discharged public employee."

In *Casey, supra,*[1] Justice Underwood traced the history of the Illinois *laches* rule for public employment discharge cases:

"° ° ° the existing rule, established by numerous cases in this and the appellate court, that discharged public employees seeking review of their discharges must file their complaints ° ° ° within six months of ° ° ° discharge or explain in the complaints the reasons why it was not filed within that six-month period. E.g., *Carroll v. Houston*, 341 Ill. 531, 537, 173 N.E. 657; *People ex rel. Macauley v. Burdette*, 285 Ill. 48, 50-51, 120 N.E. 519; *Schultheis v. City of Chicago*, 240 Ill. 167, 170, 88 N.E. 563; *Clark v. City of Chicago*, 233 Ill. 113, 114-115, 84 N.E. 140; *People ex rel. Sullivan v. Smith*, 133 Ill. App. 2d 218, 220, 272 N.E.2d 755; *People ex rel. Crnin v. Cahill*, 118 Ill. App. 2d 18, 254 N.E.2d 161; *Kadon v. Board of Fire and Police Commissioners*, 45 Ill. App. 2d 425, 195 N.E.2d 751; *People ex rel. Ballinger v. O'Connor*, 13 Ill. App. 2d 317, 142 N.E.2d 144." *Casey, supra*, 370 N.E.2d at 503 (Underwood, J., dissenting).

The application of *laches* to public employee wrongful discharge claims is thus firmly settled in Illinois, as is the six-month *laches* period that our courts have adopted as the standard for a *per se* unreasonable delay period, for such

---

[1] In *Casey, supra*, the Supreme Court rejected *laches* where public employees were "discharged in furtherance of a general policy involving numerous employees" and delayed filing suit for 23 months while they awaited a decision in "a test case which directly controlled [their] claims" and involved eight discharged employees, 370 N.E.2d at 502.

claims. The policies giving rise to the six-month *laches* rule were spelled out in the oft-quoted *Kadon* decision:

"[I]n civil services cases, where prolonged delay may easily prejudice governmental bodies, impair orderly procedures and work to the disadvantage of third parties, time is an essential factor. The most stringent requirement timewise is in those cases brought by civil service employees to compel reinstatement and payment of back salaries after discharges alleged to be illegal. A rule has been established that if these cases are not brought within six months of the discharge they will be barred on the ground of *laches*, unless a reasonable explanation can be given for the delay." *Kadon v. Board of Fire and Police Comm'rs., supra* (1st Dist. 1964), 45 Ill. App. 2d at 430, 195 N.E.2d at 753.

This almost century-old application of *laches* by the Illinois courts as a bar to public employee wrongful discharge actions has several extraordinary attributes that are pertinent here.

First, and most critical here, is the evolution of this historically equitable doctrine into a common law rule that bars at least some purely legal actions—of which public employee wrongful discharge claims is the most developed. The Illinois courts have applied the equitable *laches* doctrine to a number of legal causes of action, although it is far from clear that *laches* is *generally* applicable to actions at law in Illinois. (See *Begs v. Matthews* (5th Dist. 1982), 108 Ill. App. 3d 1112.) Another Appellate Court panel recently reviewed the posture of the Illinois decisions on this point:

"Although *laches* was originally applied only to equitable actions, 'it is not black letter law that *laches* is inapplicable to actions at law.' (*Coleman v. O'-Grady* (1990), 207 Ill. App. 3d 43, 51, 565 N.E.2d 253, 258.) In fact, in *Schultheis*, when counsel argued *laches* could be brought as a defense to equitable claims only, the court asserted, '[t]his is a mistake.' (*Schultheis*, 240 Ill. at 170, 88 N.E. at 564.) *Schultheis* noted *laches* had properly been applied to *quo warranto* and *certiorari* proceedings, both of which are at law. (*Schultheis*, 240 Ill. at 170, 88 N.E. at 564; see also *Smith v. Intergovernmental Solid Waste Disposal Association* (1992), 239 Ill. App. 3d 123, 605 N.E. 654 (*laches* can be applied as a defense to declaratory judgment actions); *Rice v. Board of Fire & Police Commissioners* (1952), 356 Ill. App. 479, 103 N.E.2d 672 (abstract of opinion) (*laches* may be applied to a *certiorari* proceeding although it is action at law).) Furthermore, monetary claims for back pay have been brought as

part of proceedings which were ultimately dismissed due to *laches*. (*Coleman*, 207 Ill. App. 3d at 52, 565 N.E.2d at 258; see *Casey*, 69 Ill. 2d 108, 370 N.E.2d 499; *People ex rel. Sullivan v. Smith* (1971), 133 Ill. App. 2d 218, 272 N.E.2d 755; *Ballinger*, 13 Ill. App. 2d 317, 142 N.E.2d 144.) Accordingly, as in *Coleman* we believe *laches*, 'being applicable to such proceedings notwithstanding the monetary claims made therein, is applicable to plaintiff's action in its entirety.' *Coleman*, 207 Ill. App. 3d at 52, 565 N.E.2d at 258." *Lee v. City of Decatur* (4th Dist. 1994), 256 Ill. App. 3d 193, 196, 627 N.E.2d 1256.

As *laches* has been applied in public sector wrongful discharge actions, our courts have extended the doctrine to both legal claims for reinstatement, usually brought as *mandamus* actions, as well as to back pay damages claims. Our review of the case law convinces us that the clear weight of authority in Illinois is that *laches* applies to public employees' claims for back wages attendant to a wrongful discharge action, whether or not coupled with a reinstatement claim. This case, of course, exemplifies a typical dual-claim wrongful discharge claim, but is now before us as a single claim for monetary compensation, due to the jurisdictional unavailability of reinstatement relief in this Court, and so we must decide, as we do, that *laches* applies to the money claim standing alone.

We observe that some of the decisions appear to have justified the extension of the equitable *laches* doctrine to the legal *mandamus*-for-reinstatement claim in these dual-claim wrongful discharge cases by analogizing that extraordinary legal remedy to the equitable remedy of injunction; and many of the decisions have applied *laches* to the back-wage claim in the same proceeding by extension—sort of a piggyback doctrine; and still other decisions have extended the *laches* doctrine to the money claim part of dual-claim wrongful discharge cases without articulating a basis; finally, as noted above, our courts have also extended the equitable *laches* doctrine to other legal actions as well. Whatever the theoretical underpinning of the application of *laches* in this public employment discharge line of cases, the weight of

the precedents in Illinois applies *laches* to *all* public employment wrongful discharge claims however styled.

This Court will follow the weight of authority, although we recognize that our Supreme Court has not passed on the precise point (whether a stand-alone back wage claim based on a wrongful discharge from public employment is subject to *laches*). We cannot find in the case law, or in the parties' arguments here, a cogent and persuasive basis on which to distinguish back-wage claims alone from back wage claims coupled with reinstatement claims of discharged public employees. The policy justification for the Illinois *laches* rule—avoidance of prejudice to the taxpayers—is applicable to back pay claims as well as to reinstatement claims of discharged public employees.

A second notable aspect of Illinois' application of *laches* is the development of a specific durational *rule* of *laches* in public employment law. Our courts have adopted a six-month *laches* rule in these public employment discharge cases which at a minimum establishes a *per se* unreasonable delay period. This evolution of the *laches* doctrine eliminates the threshold judicial determination of unreasonableness of a filing delay, which in equity is a circumstance-based variable. As to this element at least, this evolution of the six-month rule has converted an equitable principle into a legal rule.

A third significant aspect of the evolved *laches* rule at law in these cases is that a breach of the six-month rule, *i.e.*, filing a wrongful discharge claim after six months, has the effect of shifting some burden to the Claimant. At a minimum, the Claimant or plaintiff has to *plead* in his or her complaint the "reasonable justification" for the late filing and has the burden of going forward and of convincing the court that the claim is not barred by *laches*. See *Casey, supra*.

In addition, under the Supreme Court's decision in *Casey, supra*, finding an "inherent" prejudice to public employers, it is at least arguable that this *laches* element may be presumed when the six-month rule has been exceeded. (See *e.g., Lee v. City of Decatur, supra*, 256 Ill. App. 3d at 197, citing *People ex rel. Sullivan v. Smith* (1971), 133 Ill. App. 2d 218, 272 N.E.2d 755.) Many decisions nevertheless appear to rely on evidentiary showings that the public employer has in fact replaced or will replace the discharged employee-plaintiff (and would thus be subject to double-salary and benefit obligations in the event of a successful claim), as did the Appellate Court in antecedent case here. *Rudolph v. Kane Co., supra* slip opinion at 3.

Because to some significant extent, Illinois law shifts some of the burden on the *laches* issue to the plaintiff in post-six-month filings, this application of *laches* takes on some of the attributes of an element of the wrongful discharge cause of action—for claims filed six months or later—instead of a pure affirmative defense as *laches* has been applied in equity.

These reasons also support the conclusion that the six-month *laches* rule applies to public employment wrongful discharge compensation claims in Illinois.

We thus find that the six-month *laches* rule applies to this claim, and was breached. Because the Claimant has not pleaded any justification for his delay in filing in this Court, nor for his delay in filing in *any* court, this claim must be dismissed. This is straightforward and obvious.

The more difficult question is whether or not this claim should be dismissed with prejudice, or whether this Court should allow the Claimant to replead. Ordinarily this Court is liberal in allowing repleading when the defect is a

matter of pleading. In this case, however, not only has the Claimant not requested any leave to amend, but he has failed in his brief to suggest any reasonable justification for his delay in filing. In light of the Appellate Court's ruling in the antecedent case, and that court's pointed reliance on the Illinois law of *laches*, and the Claimant's ensuing silence on this key issue which one court has already found to be dispositive, we find no reason now to extend this litigation or to indulge this Claimant further.

## Conclusion

For the foregoing reasons, it is hereby ordered:

1. Respondent Kane County, Kendall County and DeKalb County are dismissed with prejudice for lack of jurisdiction;

2. Respondents Patrick Dixon, Melvyn E. Dunn, Gene L. Nottolini, Michael F. O'Brien, Barry E. Puklin, James E. Quetsch, James M. Wilson, judges of the 16th Judicial Circuit are dismissed;

3. Count I is dismissed with prejudice for lack of jurisdiction to issue a writ of *mandamus*;

4. Respondent's motion to dismiss Count II for failure to state a cause of action against the State is denied;

5. Respondent's motion to dismiss Count II as barred by collateral estoppel is denied;

6. Count II is dismissed with prejudice as barred by *laches*; and

7. This entire claim is therefore dismissed with prejudice.