THIRD DIVISION
SEPTEMBER 5, 2007

1-05-0405

| | | |
|---|---|---|
| ERWIN NEGRON, <u>et</u> <u>al</u>., | ) | |
| | ) | |
| Plaintiffs, | ) | Appeal from the |
| | ) | Circuit Court of |
| v. | ) | Cook County. |
| | ) | |
| THE CITY OF CHICAGO, a Municipal Corporation, | ) | |
| | ) | |
| Defendant-Appellee and Cross-Appellant, | ) | |
| | ) | |
| (Cedric Bailey, Kyle Erbacher, Mark Nottoli, Abner Rodriguez, | ) | |
| Bruce Phipps and Peter Vinson, | ) | |
| | ) | |
| Plaintiff-Appellants; | ) | |
| | ) | Honorable |
| Alvin Campbell, William Fiedler, David Fietko, Mark George and | ) | Julia Nowicki, |
| James Rowan, | ) | Judge Presiding. |
| | ) | |
| Plaintiffs and Cross-Appellees). | ) | |

JUSTICE CUNNINGHAM delivered the opinion of the court:

The plaintiffs, Erwin Negron and 381 other Chicago police officers (plaintiffs) filed suit in the circuit court of Cook County against the defendant, the City of Chicago (the City), alleging that they had been denied access to the police department's promotional process because of a newly adopted college credit educational requirement. The plaintiffs brought a complaint for declaratory judgment and a petition for writ of *mandamus* seeking the right to take the next sergeant's exam and be promoted without regard to the new educational requirement. The plaintiffs filed the original complaint on January 31, 2000, and 281 additional plaintiffs were added by an amended complaint

on October 5, 2001. After multiple motions to dismiss and motions for summary judgment, 11 remaining plaintiffs went to trial in November 2004 to determine if their claims were barred by *laches*. The trial court entered judgment in favor of five remaining plaintiffs who had filed their claim in January of 2000 allowing them to pursue their claim (January 2000 plaintiffs). The trial court ruled against the plaintiffs who filed suit in October of 2001(October 2001 plaintiffs), finding that their claim was barred by *laches*.

The October 2001 plaintiffs who were barred from pursuing their claim by the trial court's ruling now appeal and the City of Chicago cross-appeals the ruling in favor of the January 2000 plaintiffs. The issues on appeal are: (1) whether the January 2000 plaintiffs unreasonably delayed filing suit; and (2) whether the October 2001 plaintiffs prejudiced the City by their delay in filing suit. For the reasons outlined below, we affirm in part and reverse in part the judgment of the circuit court.

Background

The following facts have been adduced from the record.

In 1993, the City announced its intention to institute a 60-hour college credit requirement for police officers to be promoted to the rank of sergeant. The City implemented the new requirement in the fall of 1997. The City announced that all police officers must have 45 hours of college credit to be allowed to sit for the sergeant's exam and must have 60 hours of college credit by the time they are called for promotion. On November 21, 1997, the Fraternal Order of Police, Chicago Lodge #7, Fraternal Order of Police president William Nolan and police officer William Jaconetti (Jaconetti) filed a lawsuit for declaratory judgment and preliminary injunction on behalf of Jaconetti and all other affected members of the union. The lawsuit sought to enjoin the City from enforcing its new

educational requirement for the promotion of police officers. The trial court denied the preliminary injunction and dismissed the case, holding that the Fraternal Order of Police and William Nolan lacked standing to bring the lawsuit and that Jaconetti's claims were barred by *laches*. The plaintiffs appealed the trial court's decision.

On December 8, 1999, the appellate court affirmed the trial court's ruling that the Fraternal Order of Police and William Nolan lacked standing to bring the lawsuit (Nolan v. Hillard, 309 Ill. App. 3d 129, 722 N.E.2d 736 (1999)). However, the appellate court reversed the trial court on Jaconetti's claim and found that he had filed his claim in a timely manner. The appellate court also held that the City had not properly implemented the educational requirement and as a remedy, ordered that Jaconetti could take the next scheduled exam. After the Nolan decision by the appellate court, the City later amended its personnel rules on April 4, 2000, to properly implement the educational requirement.

Following the appellate court's ruling in December 1999, on January 31, 2000, 382 police officers (the January 2000 plaintiffs) filed a new lawsuit seeking a declaratory judgment and writ of *mandamus* against the City. The plaintiffs in that case requested that the court judicially declare the right of each plaintiff to sit for the next sergeant's exam without regard to the educational requirement and to be promoted if the examination results entitled them to promotion. The plaintiffs also requested that the trial court grant the same relief in a writ of *mandamus* directed to the City.

On October 5, 2001, 281 additional police officer plaintiffs (October 2001 plaintiffs) joined the lawsuit which had been filed in January 2000. The City brought multiple motions to dismiss and motions for summary judgment. The trial court ultimately ruled as follows: the Local Governmental

and Governmental Employees Tort Immunity Act (745 ILCS 10/1-101 *et seq.* (West 2004)) did not bar the plaintiffs' lawsuit; the plaintiffs stated a valid cause of action for *mandamus*; a valid question of fact remained to determine if *laches* barred the plaintiffs' claims; and the relief afforded to Jaconetti by the appellate court should be afforded to all similarly situated police officers.

On July 15, 2002, the trial court dismissed 402 plaintiffs from the pending lawsuit for failure to comply with the City's discovery requests. Named plaintiffs in the instant lawsuit, Erwin Negron and Charles Woodhouse, were among the police officers dismissed from the trial court proceedings at that time. Over the next year, various other plaintiffs were dismissed for a variety of reasons. The case eventually went to trial with only 11 remaining plaintiffs from both the January 2000 and October 2001 groups. The main issue litigated in the trial court was whether the affirmative defense of *laches* barred the plaintiffs from proceeding with their *mandamus* claim.

At trial, the City had to prove that the plaintiffs unreasonably delayed filing their claim and prejudiced the City with their delay. The City argued that the plaintiffs' cause of action accrued in 1997 when the City announced the new educational requirement. Thus, under Illinois common law, the plaintiffs then had six months to seek a writ of *mandamus*. The City argued that the plaintiffs unreasonably waited until January 2000 and October 2001 to file their claims. The City contended that the delay resulted in prejudice to the City and that the plaintiffs should be barred from pursuing their claim. The City presented the testimony of Commander William Powers, former head of the police department personnel division, to prove how the City was prejudiced by the plaintiffs' delay. Powers testified that the City announced the upcoming change in the educational requirement in 1993 to give police officers adequate time to meet the new standards. He said that the new requirement

4

was a "revolutionary step" in changing community policing and the culture of the police department. Powers claimed that the plaintiffs' delay in filing their lawsuit prejudiced the City because the result would be two classes of sergeants within the police department, one class that met the educational requirement and one class that did not. This in turn would affect morale and call into question the credibility of the police department management practices.

The plaintiffs argued that they reasonably delayed filing suit and did not prejudice the City with any alleged delay. The plaintiffs asserted that the January 2000 plaintiffs delayed filing suit against the City because they were waiting for the Nolan decision to be handed down by the Illinois Appellate Court. The individual police officer plaintiffs testified that they believed any decision rendered in the Nolan case would affect their rights and ability to sit for the sergeant's exam because they believed that their interests were being represented by the lawsuit filed by the Fraternal Order of Police and Jaconetti. The plaintiff police officers claimed they were informed about the educational requirement and pending litigation through the Fraternal Order of Police newsletter, union representatives, bulletin boards and conversations with colleagues. They also argued that the City was not prejudiced by any alleged delay; however, they did not rebut any of Commander Powers' testimony. The plaintiffs requested that they be declared eligible for promotion without regard to the educational requirement and be promoted if their scores and available openings in the ranks of sergeants warranted.

The trial court ruled in favor of the plaintiffs who had filed suit in January 2000 and against those who joined the lawsuit in October 2001. The trial court found that the plaintiffs who filed suit in January 2000 had a reasonable excuse for waiting until the conclusion of the Nolan appeal. The

January 2000 plaintiffs were found to have a good faith belief that the Nolan plaintiffs represented their interests and that issues crucial to their claims would be resolved by the appellate court. The court also held that the October 2001 plaintiffs waited an unreasonable amount of time to file suit. The trial court found that the October 2001 plaintiffs failed to exercise due diligence in filing suit, failed to offer an explanation for their delay, and prejudiced the City by their delay. The trial court relied on Commander Powers' testimony in holding that the plaintiffs' subsequent promotion would be bad for morale and leave the police department with a class of sergeants that did not meet the heightened educational requirements.

The trial court ruled in favor of the five remaining January 2000 plaintiffs, William Fiedler, Mark George, James Rowan, David Fietko, and Alvin Campbell. The court ruled against the October 2001 plaintiffs, Abner Rodriguez, Mark Nottoli, Peter Vinson, Cedric Bailey, Bruce Phipps and Kyle Erbacher. The October 2001 plaintiffs now appeal and the City cross-appeals the trial court's ruling in favor of the January 2000 plaintiffs.

Analysis

The plaintiffs sought relief by way of declaratory judgment and a petition for *mandamus*. The City asserted the defense of *laches*. Thus, the principle central to the resolution of the case is the applicability of *laches*. A trial court's ruling on the basis of *laches* is reviewed under the abuse of discretion standard. Marshall v. Metropolitan Water Reclamation District Retirement Fund, 298 Ill. App. 3d 66, 74, 697 N.E.2d 1222, 1228 (1998). Additionally, the doctrine of *laches* applies to petitions for *mandamus* as well as other civil actions such as the declaratory judgment sought by the plaintiffs. See generally Ashley v. Pierson, 339 Ill. App. 3d 733, 791 N.E.2d 666 (2003). *Mandamus*

6

is a remedy used to compel a public official or entity to perform a purely ministerial duty. People ex rel. Ryan v. Roe, 201 Ill. 2d 552, 555, 778 N.E.2d 701, 703 (2002). The doctrine of *laches* is defined as "'"the neglect or omission to assert a right which, taken in conjunction with a lapse of time and circumstances causing prejudice to the opposite party will operate as a bar to a suit."'" Bill v. Board of Education of Cicero School District 99, 351 Ill. App. 3d 47, 54, 812 N.E.2d 604, 610 (2004), quoting Lee v. City of Decatur, 256 Ill. App. 3d 192, 195, 627 N.E.2d 1256, 1258 (1994), quoting People ex rel. Heavey v. Fitzgerald, 10 Ill. App. 3d 24, 26, 293 N.E.2d 705, 708 (1973). A mere lapse of time from the accrual of the cause of action to the filing of a petition is insufficient to sustain the defense of *laches*. People ex rel. Casey v. Health & Hospitals Governing Comm'n of Illinois, 69 Ill. 2d 108, 115, 370 N.E.2d 499, 502 (1977). The defendant must prove how the plaintiff's delay caused a change in conditions and caused him to pursue a course different from that which he would otherwise have taken. People ex rel. Casey, 69 Ill. 2d at 115, 370 N.E.2d at 502. The determination of whether *laches* applies depends on the facts and circumstances of each case and lies within the sound discretion of the trial court. Hannigan v. Hoffmeister, 240 Ill. App. 3d 1065, 1074, 608 N.E.2d 396, 403 (1992).

"[A] party asserting *laches* [as an affirmative defense] must prove two fundamental elements: (1) lack of due diligence by the party asserting a claim; and (2) prejudice to the party asserting *laches*. Ashley v. Pierson, 339 Ill. App. 3d at 739, 791 N.E.2d at 671. When a defendant asserts *laches* as a defense to a petition for *mandamus*, he must establish that the plaintiff failed to exercise due diligence by filing the petition more than six months after the cause of action accrued. Ashley, 339 Ill. App. 3d at 739, 791 N.E.2d at 671. A reasonable excuse for delay in filing the petition will defeat

the defense. <u>Ashley</u>, 339 Ill. App. 3d at 739, 791 N.E.2d at 671. For the doctrine of *laches* to apply, a defendant must assert that the plaintiff had knowledge of his right but failed to assert it in a timely manner. <u>Bill</u>, 351 Ill. App. 3d at 54, 812 N.E.2d at 610. However, if the defendant is not injured by the delay, then he may not defeat the claim by asserting *laches*. <u>People ex rel. Casey</u>, 69 Ill. 2d at 115, 370 N.E.2d at 502.

We first examine the issue of whether the January 2000 plaintiffs unreasonably delayed filing suit. The City argues that the January 2000 plaintiffs unreasonably delayed filing suit because the original cause of action accrued in 1997 when the educational requirement was enacted by the City for the 1998 sergeant's exam. According to the City, the plaintiffs then had a six-month window from the enactment of the new requirement to petition for a writ of *mandamus*. The City also argues that it was not reasonable for the plaintiffs to await the outcome of the <u>Nolan</u> decision by the Illinois Appellate Court because Illinois did not recognize associational standing at that time.[1] Further, the Fraternal Order of Police newsletters accurately documented the progress of the case, including the trial court's holding that relief would only apply to Jaconetti, the only individual police officer plaintiff

---

[1]In <u>International Union of Operating Engineers, Local 148 v. Illinois Department of Employment Security</u>, 215 Ill. 2d 37, 46, 828 N.E.2d 1104, 1111 (2005), the Illinois Supreme Court, citing <u>Warth v. Seldin</u>, 422 U.S. 490, 511, 45 L. Ed. 2d 343, 362, 95 S. Ct. 2197, 2211 (1975), stated that an association may have standing to seek judicial relief on behalf of itself and its membership. The association may vindicate whatever rights and immunities it may enjoy and assert the rights of its members so long as the challenged infractions affect the members' associational ties.

We also note that the Illinois Supreme Court has since recognized the doctrine of associational standing and adopted the <u>Hunt</u> associational standing test (<u>Hunt v. Washington State Apple Advertising Comm'n</u>, 732 U.S. 333, 53 L. Ed. 2d 383, 97 S. Ct. 2434) in <u>International Union of Operating Engineers, Local 148</u>, 215 Ill. 2d at 47, 828 N.E.2d at 1111.

1-05-0405

in the 1997 Nolan lawsuit.

The plaintiffs contend that the trial court properly held that the January 2000 plaintiffs filed suit in a timely manner. The court heard testimony from the plaintiffs and concluded that they had a good-faith belief that the Nolan plaintiffs represented them and their interests. That conclusion inherently infers that the plaintiffs' belief was reasonable under the facts and circumstances considered by the trial court. The January 2000 plaintiffs also argue that they demonstrated their diligence by filing suit two months after the Illinois Appellate Court decided Nolan.

Although a plaintiff must bring a petition for *mandamus* within six months, a plaintiff may be reasonably excused if awaiting the final determination of another lawsuit in which issues crucial to his claim are being litigated. Murphy v. Rochford, 55 Ill. App. 3d 695, 702, 371 N.E.2d 260, 266 (1977). In this case, the January 2000 plaintiffs had a good-faith belief that the Nolan litigation would affect their interests and rights. The issue was of importance to the union and its members. Indeed, the plaintiffs involved in the Nolan lawsuit were the Fraternal Order of Police union representative and another similarly situated police officer, Jaconetti. The basis of their lawsuit was the same as that which the January 2000 plaintiffs would later file. Thus, it was reasonable for *all* the plaintiffs to assume that the Nolan plaintiffs represented their interests in light of the similarity of the issues and the belief that the union's representation applied to all police officers affected by the new rules. The issue of standing was specifically heard by the Nolan trial court and was an integral part of the appeal brought before the appellate court in that case. Although Illinois law did not recognize associational standing at that time, the plaintiffs argued that they thought that their union and fellow police officers' interests and their own were one and the same, thereby representing their interests and precluding

9

their need to file suit until the issues were resolved by the Illinois Appellate Court.

If the appellate court had ruled in favor of the Nolan plaintiffs on every issue, no further litigation would have been necessary. Thus, they reasonably believed the resolution of the Nolan case would eliminate their need to file suit against the City. They demonstrated diligence by filing suit within two months of the appellate court decision in Nolan. The trial court did not abuse its discretion by holding that the January 2000 plaintiffs filed suit in a timely manner. We affirm the trial court's ruling for the January 2000 plaintiffs.

The next issue is whether the City was prejudiced by the October 2001 plaintiffs' delay in filing suit. The October 2001 plaintiffs argue that the City has failed to establish any prejudice resulting from their 18-month delay in joining the pending lawsuit. The only evidence of prejudice to the City was the testimony of Commander Powers. He testified that the City would be prejudiced by having a separate class of newly promoted sergeants who did not meet the new educational requirement. The crux of his testimony was that morale would be negatively impacted by having two classes of sergeants with the police department. The plaintiffs assert that this is insufficient to establish any detriment to the City resulting from the October 2001 plaintiffs' delay in joining the pending lawsuit.

The City argues that the trial court's holding with respect to the October 2001 plaintiffs was proper and should be upheld. The City asserts that Commander Powers was competent to testify regarding police department policy and the effects of the October 2001 plaintiffs' delay on morale. The City considered it a benefit to have sergeants with a higher education level to foster better community policing. The City also points out that the trial court found that the testimony of Powers

was not rebutted by the plaintiffs.

This court has examined the prejudice suffered by public entities because of delay in several other situations. In <u>Ashley v. Pierson</u>, 339 Ill. App. 3d 733, 740, 791 N.E.2d 666, 672 (2003), the plaintiff (a department of corrections inmate) waited more than two years after his final administrative hearing to file a petition for *mandamus*. The court held that the Department of Corrections was prejudiced because it incurred great administrative burden and expense by conducting reviews so long after the original proceeding. <u>Ashley v. Pierson</u>, 339 Ill. App. 3d at 740, 791 N.E.2d 666. In <u>Bill v. Board of Education of Cicero School District 99</u>, 351 Ill. App. 3d 47, 61, 812 N.E.2d 604, 615 (2004), the court held that *laches* prevented a teacher from seeking restitution from her former school when she filed suit 14 months after the cause of action accrued. The court held that the district was prejudiced because the employee's delay would lead to the payment of both the replacement worker's salary and the plaintiff's back wages. These cases demonstrate a prejudice specifically resulting from the plaintiff's unreasonable delay in filing their claim.

In the instant case, there is no such tangible prejudice. The one argument advanced by the City regarding prejudice, when closely examined, fails. The City claims that it was prejudiced by the October 2001 plaintiffs because the promotion of police officers that do not meet the heightened educational requirements would be bad for police department morale. However, for the City to successfully prove prejudice, it has to establish how the October 2001 plaintiffs caused it to pursue a course different from that which it would have otherwise pursued if they had joined the pending lawsuit earlier. The City by its own policy implementation would necessarily have two classes of sergeants, one which possessed the new educational requirements, and one which did not. The

11

promotion of officers who fail to meet the educational requirement and any resulting morale change cannot reasonably be said to be the result of the October 2001 plaintiffs joining the lawsuit 18 months after the Nolan decision. It was inherent in the petition for *mandamus* filed by the plaintiffs that if they prevailed, they would be promoted without the educational requirement. This is not a detriment caused by the October 2001 plaintiffs joining the lawsuit 18 months after the Nolan decision and is insufficient to sustain the affirmative defense of *laches*. The trial court's ruling for the City on that issue is therefore reversed.

For the forgoing reasons, we affirm the trial court's ruling in favor of the January 2000 plaintiffs and reverse the trial court's ruling in favor for the City and against the October 2001 plaintiffs.

Affirmed in part and reversed in part.

GREIMAN and KARNEZIS, J.J., concur.